## Ashhurst *against* Given.

A testator devised to his son an estate in trust for the following purposes: " that he shall possess, occupy and manage the same and conduct and carry on the business there, and to trade, deal, barter, buy and sell in and for all things that pertain to the said estate and its business or its products during his natural life; and out of the profits thereof from time to time to make such investments or purchase of other property real or personal for the same uses, purposes and trusts, to wit, for the use of such child or children as the said son shall have at the time of his death; and if he shall die without issue, then for the use of such person or persons as shall be his heir or heirs at law at the time: giving to the devisee the discretion and power to sell the estate, and out of the proceeds thereof to make such other investments real or personal, or to commence, conduct and carry on such other business for the benefit of the *cestuis que trust* as he may deem most advantageous; subjecting the estate devised or its proceeds or investments to such debts only as shall be contracted in the execution of the trust. And in consideration that the son shall and will undertake and continue to execute personally and perform the trusts committed to him, he shall be allowed a reasonable support out of the trust fund for his personal services rendered." The testator then declares his purpose, in creating this trust, to be, that the creditors of the son may not deprive him of that bounty which he thus appropriates for his maintenance:—*Held*, that the estate was not subject to execution for the debts of the son contracted previously to the devise.

ERROR to the Common Pleas of *Cumberland* county.

Ashhurst and sons against Samuel Given. The plaintiffs obtained a judgment against the defendant, upon which they sued out a writ of execution and levied it upon the life estate of the defendant devised to him by the will of his father, James Given, deceased. The question arose upon a motion of the plaintiffs to have a sequestator appointed in pursuance of the 68th and 69th sections of the Act of 16th June 1836, and was, whether Samuel Given derived such an estate under the will of his father as was subject to execution for debts contracted previously to the testator's death. The court below (HEPBURN, President), decided that he did not, and refused to appoint a sequestrator; when this writ of error was sued out.

That part of the will which created the estate, was as follows:

—I devise to my son Samuel the one undivided half part of the Kidderminster estate, including the factory buildings, dwelling-house, water-powers and all the privileges and appurtenances whatsoever thereunto belonging, and which are contained within the purchase made from the heirs of Charles M'Clure, deceased, together with the machinery and fixtures necessary to carry the same on, subject to the devise to his mother heretofore made. This devise, however, to my son Samuel is in trust for the following purposes and uses, viz., *that* he shall possess, occupy and manage the same, and conduct and carry on the business there, and to trade, deal, barter, buy and sell in and for all things that pertain to the said estate and its business or its products during his natural life, and out of the profits thereof, from time to time to make such investments or purchase of other property real or personal for the same uses, purposes and trusts, to wit, for the use of such child or children as the said Samuel Given may have lawfully begotten at the time of his death, and if he shall die without issue, then for the use of such person or persons as shall be my heir or heirs at law at that time. And if the said Samuel Given should at any time deem it advisable and useful for the purposes of the trust hereby created, that the said property hereby devised should be sold or any part of it, then I do hereby authorize and empower him to sell the same and to make a title to the purchaser in fee-simple—and with the proceeds of such sale I do hereby authorize and empower my said son Samuel to make such other investments real or personal—or commence, conduct and carry on such other business for the benefit of the *cestui que trust* as he may deem most advantageous; subjecting the said estate hereby devised, or its proceeds or investments, to such debts only as shall be contracted in the execution of the trust. And in consideration that my son Samuel shall and will undertake and continue to execute person-ally and perform the trusts hereby committed to him, he shall be allowed a reasonable support out of the trust fund for his personal services rendered. I desire that it shall be understood, that it is not because of the want of confidence which I might have in my said son Samuel that I make no devise or bequest absolutely to him, but it is because I desire to provide against my bounty to his children and my heirs being appropriated to those debts which he contracted in an unfortunate business."

*Reed*, for plaintiffs in error.

Under the will of James Given, his son Samuel took a life estate in the property levied on. It was not in the power of the father to devise and bequeath to his son a large estate real and personal, giving him, as the will in this case does, absolute and entire con-trol over it during his life and for his own immediate benefit; vesting in him a right to use, occupy and enjoy it; barter, sell and exchange it; to vest and reinvest the proceeds; with the full

enjoyment of every right and incident of ownership without a single restriction, and without the co-existence of trustee, and *cestui que trust*, or the possibility of any such relation during Samuel Given's lifetime—and yet, to screen the property from his creditors. A father cannot, by the employment of any language, vest in a son an immense estate real and personal, for his own unqualified use during life, and yet that son be, in the eye of the law, insolvent.

Under the powers in the will, Samuel Given may sell the whole, or any part of the estate. He may not only commute the estate, or any part of it, to suit his own views, but he may from time to time change his business and pursuits, and apply the funds for any particular purpose at his own option. And the declared intent of these arrangements is, to protect the property against his creditors.

A power and a trust are substantially the same. Each consists in giving effect to "the will of another:" where the will of the operator is the guide in the management or alienation of estates, as in this case, it is ownership, not trust or confidence; an absolute power in a trustee, is ownership. This case, if possible, is stronger; for Samuel Given is his own trustee. The beneficial interest, in ordinary cases, which a man takes under the execution of a power, forms part of his estate, and is subject to be taken in execution for his debts. Nor can any appointment be made so as to protect the proceeds from the debts of the appointee. It would be contrary to the policy of the law, which is not allowed. It is settled law, that the legal estate in the hands of a trustee subject to all the incidents of ownership, may be taken in execution. No one can be seised of a use for his own benefit, nor can he be a trustee for himself. Where the legal and equitable estates unite in the same person, as we contend they do here, the trust is determined. Trustees are but instruments of others; if more, they have an interest, a property; and that property is liable for their debts. There is nothing opposed to the conclusion that Samuel Given has a life estate, except the declaration of the testator that it shall not be so: but the law, and not the testator, must draw the conclusion.

The case of *Holdship* v. *Patterson* is entirely different from this. No material point in this case was either raised or determined in that. He cited *Sugd. on Powers* 29; 1 *Atk.* 465; 2 *Ibid.* 172; 3 *Ibid.* 269; *Lewin on Trusts* 138, 242; *Willis on Trustees* 33; *Ibid.* 16; 1 *Cruise Dig.* 503, 402, 429; 16 *Law Lib.* 18; 15 *Ibid.* 5; 24 *Ibid.* 70, 123; 10 *Ibid.* 15, 16; *Brackenridge on Trusts* 40, 64, 70, 72, 76, 81.

*Watts*, for defendant in error.

It will be perceived that the peculiar circumstances of the devisee and his relation to the testator, rendered necessary the provisions of the devise. The will was advisedly and deliberately drawn, upon what were supposed to be clear legal principles, well

settled and strongly recognised by this Court in the case of *Hold
ship* v. *Patterson*, (7 *Watts* 547). It is said in the argument for
the plaintiffs, that "there is a distinct and positive devise to
Samuel," and "that the alleged trust is co-extensive with an abso-
lute estate." Neither of these propositions can be maintained in
the sense in which they are used. Although there be a "positive
devise to Samuel," yet that devise is to him as a trustee, and his
*maintenance* out of it is made a condition of his acceptance. Is
it "co-extensive with an absolute estate?" not if an "absolute
estate" means that interest of which the tenant may dispose at any
time, in any way, and to any one he chooses. Clearly in this case,
his use of it, his trading with it, his reinvestment of it, his sale of
it, are all for a trustee, not for his own use, but for that of others:
and upon his death he can make no disposition of it, but the whole,
with its accumulation, will pass to the *cestui que trust*.

It is said "there is no *cestui que trust*, and can be none during
the life of Samuel Given." Grant it, and what is the inference?
that a *cestui que trust* must be in being when the estate is created?
There can be no authority for this. On the contrary, it is most
frequently the purpose of a trust to support the estate and accu-
mulate it for persons not in being. An executor is often a trustee
for this purpose, and that he should be paid for it out of the fund
itself either in money or maintenance, would not create in him an
estate subject to execution, and by which the trust would be
destroyed.

All the authorities cited are applicable to cases in which the
trustee has a beneficial interest. Here he has no beneficial interest
which can be separated from his person; the moment he ceases to
exercise the power, he ceases to be entitled to maintenance,
which is the only consideration of it. But although he may have
a beneficial interest, it is not the subject of levy or any other pro-
ceeding for the old debts of Samuel Given. What can be more
strong than the positions laid down by the Chief Justice in the case
of *Holdship* v. *Patterson?* That the right to a debtor's labour is
not subject to execution. That he may dispose of his services for
his own purposes and on his own terms. That if a debtor con-
tracts to bestow his own labour for his own maintenance, he be-
comes a purchaser of a thing so inseparable from his own person,
that it cannot be taken from him by execution. That a benefactor
may provide for a friend without exposing his bounty to the debts
or improvidence of the beneficiary. That to appropriate a gift to
a purpose or person not intended, would be an invasion of the
donor's private dominion.

These principles are so peculiarly applicable to this case, that
they seem to be a complete answer to everything that has been
suggested by the plaintiffs.

But suppose the proceeding of the plaintiffs to be all legal and
right, and that the court should appoint a sequestrator; what

[Ashhurst *v.* Given.]

becomes of the testator's devise of the estate and profits of it to the children of Samuel Given, or if he leaves none, to the testator's heirs at law? The provisions of his will cannot be defeated unless they be void; and if so, instead of enlarging the interest of Samuel Given, the trustee, there would be a resulting trust to the heirs at law of the testator. Samuel Given can have nothing but what the will gives him—a maintenance in consideration of his services. Suppose he had refused to accept the devise on the terms imposed, would he have been entitled to any estate under his father's will or otherwise? And if he ceases to perform the conditions annexed to the devise, will he be in any better situation?

There is, then, nothing in the will of the testator which violates any known principle of law or public policy. But there is yet a more plain and unanswerable objection to the principles contended for by the plaintiff in error. He places himself in the position of claiming title through the devisee, under the will of the testator, founded upon the disappointment of the provisions of that will. While, therefore, he would establish the legal validity of the devise, to appropriate the estate to himself, he can only do so, by defeating the condition upon which the existence of the estate depends. 7 *Serg. & Rawle* 68.

The opinion of the Court was delivered by

KENNEDY, J.—Originally, at common law, the feoffee to uses was the complete owner of the land, and his estate therein was subject to all the incidents to which real ownership was liable. *Co. Lit.* 271 *b. note* (1). His wife was entitled to dower in it. *Bro. Feoff. Uses, pl.* 10. It was subject to wardship, relief, &c. He had the power of selling it, and forfeited it for treason or felony. In short, he might have brought actions, and have exercised every kind of ownership over, or in respect of, it. *Dyer* 9; *Jenk. Rep.* 190. But after some time, notwithstanding the legal estate was vested in the feoffee to uses, equity stepped in to the relief of the *cestui que use,* and furnished a protection to the latter against the judgments, other encumbrances, and bankruptcy of the former. 2 *P. Wms.* 278; 1 *Bro. Ch. Ca.* 278; 2 *P. Wms.* 316; 3 *Ibid.* 187, *note* A.; also against the dower and free bench of his wife. *Hinton* v. *Hinton,* (2 *Vez.* 634, 638); *Noel* v. *Jevon,* (2 *Freem.* 43); *Bevant* v. *Pope,* (*Ibid.* 71); and against the tenancy by curtesy of the husband of a female trustee, *Cashborn* v. *Inglish,* (7 *Vin. Abr.* 157). At length, however, the Statute of Uses, 27 *Hen.* 8, *c.* 10, was passed, by which the possession was devested out of the persons seised to the use, and transferred to the *cestuis que use;* thus vesting the latter with the legal estate, and putting them in the place of the feoffees. *Co. Lit.* 271, *note* (1). Trusts, since the passage of this statute, are in most respects what uses were previously at the common law. *Same note.* But then it is not every use which may be created that the statute will operate

on, so as to transfer the possession to the *cestui que use*. For example, if a devise be made to trustees, to receive the rents and profits thereof during the life of A, and that such rents and profits shall be applied for the subsistence and maintenance of the said A during his life, the use in such case is not executed in A by the statute, and cannot therefore unite with a subsequent legal limitation to the heirs of the body of A. *Silvester* v. *Wilson*, (2 *Term Rep.* 444). See also *Symson* v. *Turner*, (1 *Eq. Ca. Abr.* 383); 2 *Bl. Comm.* 336; *Shapland* v. *Smith*, (1 *Bro. Ch. Ca.* 75). The reason why the statute cannot operate in such case to execute the use, is very obvious, because it would be contrary to the intention of the testator as manifested by the terms of the devise, that the *cestui que use* should become the legal owner of the estate, and as such take the possession of it under the statute; when it is manifest that the testator intended the devisee or trustee should take and retain the possession for the purpose of administering the trust, which cannot be well done without it.

As to the case before us, it is perfectly clear that the statute is in nowise applicable to it. First, because, there is no *cestui que use* in being as yet, to whom the possession of the estate devised can be transferred; and secondly, because, by the terms of the devise it is evident that the testator has reposed a personal confidence in his son Samuel, the trustee, by intrusting to him personally the entire management and accumulation of the estate according to his own discretion; thus rendering it utterly impracticable for any other than Samuel to administer and execute the trust agreeably to the will of the donor. But it does not follow, as seems to be suggested by one part of the argument of the counsel for the plaintiff in error, that because the Statute of Uses does not operate on the son, Samuel, therefore, must be regarded as the legal and absolute owner of the estate, both at law and in equity, and consequently that it is liable to be taken in execution and applied to the payment of his debts. For although the statute is inoperative, yet the use declared must be treated and dealt with as if the statute had never been passed. But before the enactment of it, equity, as has been already shown above, interposed to protect the rights of the *cestui que use*, and to preserve the estate for his benefit from the debts and encumbrances of the trustee, according to the design and intention of the donor or party creating the trust.

It is objected, however, that inasmuch as no *cestuis que use* are appointed by the will to receive the rents and profits of the estate, and it cannot be known during the life of Samuel who they are or may be, and Samuel is to have the use of the estate during that period for his support and maintenance, he must be considered as having a real interest therein, which is incompatible with a mere trusteeship, and such as can only belong to a real ownership, at least for life. It is certainly not necessary to the creation of a

[Ashhurst v. Given.]

trust estate that a *cestui que use* in being should be named, nor is it requisite that the *cestui que use* should be known as such before the death of the trustee for life. It is sufficient if the person designated as the *cestui que use* be in existence, and can be distinguished at the death of the trustee. It is also perfectly consistent with the idea of a trusteeship that the trustee should be compensated for his services rendered in the execution of the trust; and in all cases of voluntary trusts there can be no impropriety or illegality in leaving it to the party creating the trust to say what that compensation shall be, and to the person appointed trustee to determine whether he will accept and undertake the administration of the trust for the compensation offered. It may be a certain sum of money to be deducted annually, and taken by the trustee out of the profits or trust estate; or it may be an uncertain sum, as in the present instance, whatever it may be, that shall be sufficient for his support and maintenance, be it little or great. In the first case, it will scarcely be pretended that the trust estate could be taken in execution for the debts of the trustee. And if it be that it could not, it is equally clear that it could not in the second instance; for the principle of the compensation and its relation to the estate is precisely the same in the latter that it is in the former. And where the trustee is required to apply all his time and attention, as in the case under consideration, to the management and concerns of a valuable and complicated trust estate, an adequate support or maintenance of himself and family, if he should have any, would seem to be as small a compensation as could well or ought to be offered and accepted. This is all that is given to Samuel, the trustee in this case, or that he has any right to claim; for by the terms of the will creating the trust, the whole of the rents, profits and proceeds of the trust estate, over and beyond what shall be requisite for his support, are to be disposed of by him in such way as he shall think most advisable, so that they shall accumulate, not for his benefit, but for the benefit of those who shall, upon his death, be entitled to receive and take the same according to the terms of the will. That an accumulation of the rents and proceeds of a trust estate may be directed by the party creating it for the benefit of those who may and shall come into being during the life of the trustee, or be in existence at the time of his death, cannot be questioned. This subject underwent great discussion, as also consideration, in the celebrated case of *Thelluson* v. *Woodford*, (4 *Vez.* 227), 2 *New Reports* 357, where it was determined that *accumulation* of the rents of an estate might be directed for so long a time as that during which the law allows a man to render the estate unalienable; which produced the passage of an Act of Parliament, 39 and 40 *Geo.* 4, *c.* 98, confining the power of accumulation to twenty-one years.

In such an extension of the *accumulation*, it must generally be, as it was actually in that case, that the accumulation was for the

v. — 42　　　　　2 o *

[Ashhurst v. Given.]

use and benefit of those who were unborn at the time of the creation of the trust. But this formed no objection to it, as long as it did not interfere with the period allowed by law for rendering estates unalienable, which is one or more lives in being, and twenty-one years afterwards, and a few months, allowing for gestation. There is no established principle of either law or equity which gives the creditors of Samuel Given a right to apply the estate, which did belong to his father at the time of his death, to the payment of their claims, in direct opposition to the disposition which the father by his will made of it. Whoever has the right to give, has the right to dispose of the same as he pleases. *Cujus est dare ejus est disponere*, is the maxim which governs in such case.

Neither can it advance such claim on the part of Samuel's creditors, that the trust estate may be greatly enhanced by his personal services, and that his services may be worth much more than his support or maintenance. A man, though indebted and wholly unable to pay anything, may dispose of his personal services at what price he pleases, and his creditors cannot object to his doing so. If he be content to give them for his mere support and maintenance, without more, he has unquestionably the right to do so; though I would say, if he has it in his power by means of his personal services, even when he is destitute of all other means, to support himself and at the same time to pay his creditors, he ought to do so. A proper sense of moral obligation requires it of him. But if he does not choose to do so, it cannot be tolerated for a moment that his creditors shall be permitted to seize upon whatever has been committed to his possession and care, to be managed expressly for the use and benefit of others, and not for himself. The observations of the Chief Justice in *Holdship* v. *Patterson*, (7 *Watts* 551), may be applied here with double force, where the relation of father and son exists between the benefactor and the beneficiary. He there says, " a benefactor may certainly provide for a friend (and especially a child) without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity (parental duty). To appropriate a gift to a purpose or person not intended, would be an invasion of the donor's private dominion."

Judgment affirmed.