## Ann Myers's Appeal.

48  26
159  139
48   26
182  344

*Construction of will.—Bequest of personal property to widow, effect of.—
How restrained by other testamentary disposition of testator's estate.*

1. A bequest by a testator to his wife of as much of his "personal property as she chooses to retain, to be set apart for her without an appraisement being had of the same," is sufficient to pass to her the whole personal estate, choses in action included.

2. But where the testator in his will first directed the payment of debts out of his personal estate, then of legacies to relatives, and afterwards a sale of all his real estate, but that until sold his wife should remain in the homestead and receive an annuity, the legacies were, like the debts and funeral expenses, chargeable upon the personal estate, as a primary fund, after which payments she was entitled to as much of the balance as she chose to retain.

3. Hence the administrator *c. t. a.* was entitled to credit in his administration account, for the payment of the legacies out of the personal estate.

APPEAL from the Orphans' Court of *Adams county.*

This was an appeal by Ann Myers, late Ann Snyder, the widow of Baltzer Snyder, from the decree of the court below on the distribution of the estate of her deceased husband.

The case was this:—

Baltzer Snyder died on the 27th day of November 1860, having made a will dated the 18th day of November 1860, which was proved December 4th 1860. Letters of administration, with the will annexed, were granted to Daniel K. Snyder, December 4th 1860.

The testator left personal property, which as per inventory filed December 18th 1860, amounted to        $6601.60

    Consisting of bonds and notes    -    -    5148.36

    And household property, stock, and implements on

    farm    -    -    -    -    -    -    1050.77

The real estate amounted to    -    -    -    -    8420.00

By his will he directed that all his just debts and funeral expenses be paid as soon after his decease as possible, out of the first moneys that should come into the hands of his executors— and then proceeded as follows: "I will and bequeath unto Jacob Hersh and his wife Sarah $250; I will and bequeath unto Henry Yeagy $250; I will and bequeath unto David Dietrick and his wife Elizabeth $250; I will and bequeath unto David Wolf and his wife Lydia $250; I will and bequeath unto Jesse Houck $250; I will and bequeath unto Baltzer Houck $250; I will and bequeath unto Sabina Gardner $250; I order and direct my executors hereinafter named to sell all my real estate as soon as convenient after my decease to the highest and best bidder or bidders either at private sale or public outcry, hereby giving them authority to make as good a title to the purchaser or purchasers as I myself might or could do if living. I will and bequeath unto my beloved wife Ann as much of my per-

sonal property as she chooses to retain, to be set apart for her without any appraisement being had of the same. I desire that my beloved wife Ann remains on the property I now reside on, until the same is sold and possession given to the purchaser. I also will and bequeath unto my beloved wife Ann $200 yearly, until my real estate is sold and possession given to the purchasers. I also will and bequeath to my beloved wife Ann $4000, to be paid to her as soon as it can be collected from the sale of my real estate. My will is that all the rest and residue of my estate be divided equally among my brothers and sisters or their children, to wit: George Snyder, Conrad Snyder's heirs, Henry Snyder, Sarah, intermarried to Christian Benner, Elizabeth Brinkerhoff's heirs, Lydia Hersh."

Under this will the widow claimed the whole of the personal estate of the testator, of which claim due notice was given the administrator, December 12th 1860.

In his account the administrator claimed credit for the payment of the legacies of $250 each; to Henry Yeagy, David Dietrick and wife, Daniel Wolf and wife, Jesse Houck, Baltzer Houck, and Sabina Gardner. To these credits the widow's counsel excepted, and claimed the same as belonging to her.

An auditor was appointed to dispose of these exceptions and make distribution of the balance in the hands of the administrator. The balance in his hands was, as per account, $198.99, or per auditor's report, after deducting expenses, &c., $181.90. There were also outstanding and uncollected, notes amounting to $2348.

The auditor dismissed the exceptions to the account, but gave to the widow all the bonds and notes of testators' estate, after paying the debts and above-mentioned legacies.

To the payment of these legacies out of the bonds and notes, the widow's counsel excepted.

The court below decided, that the testator did not intend to bequeath to his widow the choses in action, dismissed the exceptions which had been filed for her, and directed the $181.80, which the creditor had given to her, should be distributed to the testator's brothers and sisters as set out in the will.

It was averred here for the appellant, that the Orphans' Court erred:—

1. In decreeing that the widow was not entitled to the bonds and notes of testator's estate.

2. In decreeing the distribution of such bonds and notes or their proceeds to the general and residuary legatees, the general or definite pecuniary and residuary legatees, not being entitled to any portion of the personal estate, until the claim of the widow upon it is fully satisfied on account of her bequest, and the

claim of the residuary legatees in particular being postponed by the express terms of the will to the debts and all other legatees; and

3. In dismissing the exceptions of the widow to the auditor's report.

*Samuel Hepburn* and *R. G. McCreary,* for appellant.

*Wm. McClean,* for appellee.

The opinion of the court was delivered, June 22d 1864, by

WOODWARD, C. J.—Both reason and authority sustain the argument of the appellant's counsel, that the words of a testator, "I will and bequeath unto my beloved wife Ann, as much of my personal property as she chooses to retain, to be set apart for her without any appraisement being had of the same," are sufficient to pass to her the whole personal estate, choses in action included. Sufficient, be it understood, if the words stood alone in the will, and were to be taken in an absolute and unqualified sense. But the difficulty which the argument for the appellant encounters is, that these words in Baltzer Snyder's will are not to be taken independently and absolutely, but connectedly with other words of the context, and consistently with the plan or scheme of the whole will.

The testator died without issue leaving a widow (the appellant) and brothers and sisters, and children of deceased brothers and sisters. He left a personal estate - - - - $6601.60
Of which bonds and notes amounted to - - - 5148.36
The residue was household goods and farm stock and implements.
The real estate amounted to - - - - - 8420.00

He first directs that his debts and funeral expenses be paid out of the first moneys that shall come into the hands of his executors, and then he gives seven legacies, of $250 each, to married sisters and their husbands, and to brothers-in-law by a former marriage, three of the legatees being indebted to him in sums about equal to the legacies given to them respectively. He next ordered his executors to sell his real estate as soon as convenient after his decease. Then follows the clause quoted above, giving his wife as much personal property as she chooses to retain, with direction that she remain on the real estate, and receive $200 yearly until it be sold. Then follows a bequest to her of $4000, to be paid out of the proceeds of the real estate when sold; and the will concludes with a residuary clause in favor of his brothers and sisters and their children, who are specifically named.

In his account of the personal estate the administrator claimed

credits for the payment of six of the $250 legacies, and they were allowed to him, and this is the matter complained of by the widow. She objects to any of the personal estate going to legatees, because it all belongs to her.

Taking into view all parts of the will, and especially the yearly payment of $200 to the widow, we think it is not more manifest that the testator meant that his debts and funeral expenses should be paid out of his personal estate, than that these legacies should be. If she was to take the whole personal estate, how was her annuity to be paid? Like the debts, the legacies and this annuity were chargeable upon personal estate as the primary fund, and the "personal property," of which the widow was to retain as much as she chose, meant that which should remain of the personalty after she took her $300 allowed by law, and after the debts and legacies were paid. She might as well set up that one clause of the will against payment of debts and funeral expenses, as against payment of the legacies. The whole will must have effect if possible. And there is not the slightest difficulty in giving harmonious action to every part, except we elevate the clause relied on by the widow out of its place, and shut our eyes on all the rest.

In Garman v. Garman, 3 Casey 116, and in McLaughlin v. McLaughlin, 12 Harris 22, we refused to construe the words "personal property" as including choses in action, but this was on the ground that the will directed sales of the personalty, and that choses in action were not ordinarily proper subjects of administrator's sales. We have no such ground in this case, and whilst we concede that the bequest to the widow was, in its terms, large enough to carry the whole personal estate, we restrain the generality of the terms, according to the evident intent as deduced from the whole instrument.

The decree is affirmed.