## Hahn *v.* Hutchinson, Appellant.

[Marked to be reported.]

*Trusts and trustees—Spendthrift trust—Will.*

There can be no valid spendthrift trust where the trustee is also the cestui que trust, with the absolute ownership of the subject of the trust, whether income or principal.

Testatrix by her will directed as follows: "For the purpose of carrying out this my will, I give, devise and bequeath to my husband my entire estate, real, personal and mixed, in trust, he to have the entire control, so long as he may desire, of the same, and use so much of the income thereof as he may desire." Then followed a provision that the income should not be liable for any of his debts, present or future. She further directed that her husband should have unrestricted control of the entire trust estate, and should not at any time be required to render an account. He was empowered to improve, sell, or incumber the real estate, "with the same effect as if he were the owner," except that in making deeds or mortgages he must execute them as trustee. He was also empowered to make a last will and testament, and thereby "to alter, vary or change the amounts coming to" the children, under the will of testatrix, and "to designate the property and make a division of the same as he may deem best, and such division shall be binding and conclusive on all parties affected thereby." *Held*, (1) that the husband took an absolute and uncontrolled ownership of all the income of the entire property during his life; (2) that no valid spendthrift trust was created in the income, and that it was liable to be sequestered for the husband's debts.

Argued Oct. 31, 1893. Appeal, No. 194, Oct. T., 1893, by defendant, David Hutchinson, from order of C. P. Allegheny Co., April T., 1893, No. 189, making absolute rule awarding writ to sequester income of defendant's life estate. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Rule for writ to sequester income of defendant's life estate.

From the record it appears that Margaret Hutchinson, defendant's wife, died Nov. 28, 1890, leaving a will, the material portions of which are as follows:

"First. For the purpose of carrying out this my will, I give, devise and bequeath to my husband, David Hutchinson, my entire estate, real, personal or mixed, in trust, he to have the entire control, so long as he may desire, of the same, and use

so much of the income thereof as he may desire, but I especially direct that the same shall not be subject to or liable for the payment of any individual debts that he may now owe or hereafter contract, excepting only those he may contract for improvements or repairs as trustee for the benefit of, or that he may deem to be for the benefit of the estate so held by him in trust, the said trust estate or any portion that may go to his individual support shall not be subject to his individual debts or any process issued for the collection of the same by execution, attachment, sequestration, or any other process, but the same is to be paid into his own hand, and cannot be anticipated, sold or pledged.

" He shall have unrestricted control of the entire trust estate, and shall not be at any time asked or required to furnish a statement or render an account, as I have full confidence in his honesty and ability to manage, and I hereby direct that he shall not be required to give bond for the faithful performance of his trust, and if required, I hereby make my estate his bail.

" That in case any beneficiary or legatee under this will attempts to interfere with him in the discharge of his trust, or attempts to defeat this trust, compel an account or set aside this will, then he or she, by such act or acts, makes null and void all bequests herein contained for him or her, and takes nothing in any manner from my estate.

" It being my desire, and my intention being to increase and improve my estate. It is especially provided that my said trustee, without the consent, approval or knowledge of my children, may buy other property, execute deeds of conveyance as trustee, and encumber or sell any portion of my estate with the same effect as if he were the owner, but such deeds and encumbrances, mortgages, etc., must be executed by him as trustee under this my will. And it is further expressly provided that my estate shall vest in said trustee with full power in my said trustee to by his last will and testament, should he make one, to alter, vary, or change the amounts coming to my said children, and appoint executors to carry out the same; he also to have full power by will to designate the property and make a division of the same as he may deem best, and such division shall be binding and conclusive on all parties affected thereby, and for this purpose and for carrying

out of the same vest the estate in my husband in trust for the use of my children in such portions as he may designate in any will by him hereafter made.

" Second. This clause is to be subject to all the provisions of the first clause, and is only made in case my husband should neglect or refuse to make a will, and is in conformity to the mutual desires of myself and husband, David Hutchinson, and in accord with our views at the present time, and in case at any time in the future it should not prove satisfactory, or in his opinion just and right, the same may be altered and changed as provided for in the last clause.

" To my daughter, Jeanette Moffit, after the decease of her father, I give, devise and bequeath the one half of my entire estate (after the payment of all debts), real, personal and mixed, not to be subject to the control or courtesy of any husband, but the same to be for her sole and separate use.

" And to Annie Margaret Hutchinson, I give (subject to the provisions of the first clause of this my will), devise and bequeath one half of my entire estate, and in partitioning the same she is to have first choice, provided she marry to the satisfaction of the family, up until her marriage I give to her a sum sufficient to maintain her, and for her sole use and support not exceeding three thousand dollars per annum to be paid to her quarterly, which annuity is to continue until her marriage, and not to be anticipated or subject to any process for the enforcement of the collection of debt, but to be paid to her in her own hand.   In case she should marry contrary to the wishes of the family, then I direct that a sufficient fund be invested (by a trustee to be appointed under the first clause), to yield her not less than $500 per annum and not more than $1,000 per annum, subject to the same provisions as the $3,000 hereinbefore mentioned, upon the decease of my said daughter, I direct the fund shall go to her heirs, but not to be subject to any courtesy of any husband she may have then living.   The whole of said trust fund to be divided among them equally whether the same be real estate or cash money."

Plaintiff, claiming that David Hutchinson took a life estate under the will, made a levy upon the real estate which was of Margaret and then took a rule on David to sequester the rents, issues and profits thereof.   An answer was filed setting up that

David did not have an absolute estate, but that the estate was a trust estate. The court made the rule absolute in an opinion by WHITE, J.

*Error assigned* was above order, quoting it.

*W. B. Rodgers, A. K. Stevenson* with him, for appellant.— The legal title to the trust estate is vested in the trustee and not executed in the cestuis que trust by the statute of uses: Holdship v. Patterson, 7 Watts, 547; Ashurst v. Given, 5 W. & S. 330; Overman's Ap., 88 Pa. 276; Stambaugh's Est., 135 Pa. 585.

The annuity to Annie Margaret for her use and support takes precedence of the bequest to David, because the sum is intended for her maintenance and support and therefore must be paid out of the income in the absence of an express direction to pay out of the principal: Hargood v. Wells, 1 Hill, 60; Walker v. Wetherell, 6 Ves. 473.

It is not illegal nor improper for the same person to be both trustee and cestui que trust, and that too in the case of a spend-thrift trust: Ashurst v. Given, 5 W. & S. 323; Overman's Ap., 88 Pa. 276; Dickerson's Est., 115 Pa. 198.

It is not unusual in a will to provide that the trustee shall have power to determine what is for the best interests of the estate and act accordingly: Woodrop v. Weed, 154 Pa. 307; Marshall's Est., 138 Pa. 285; Dull's Est., 137 Pa. 112; Ashurst v. Given, 5 W. & S. 330; Holdship v. Patterson, 7 Watts, 547; Chew's Ap., 45 Pa. 228.

If any beneficiary attempts to compel an account or defeat the trust or set aside the will, then he or she loses all rights under the will. Such provisions are not contrary to public policy: Cooke v. Turner, 15 M. & W. 727; Hoit v. Hoit, 42 N. J. Eq. 388; Chew's Ap., 45 Pa. 228.

The trustee may, for the purpose of increasing or improving the estate, sell or incumber any portion thereof and buy other property. There is nothing unusual in this. The following cases contain similar powers: Woddrop v. Weed, 154 Pa. 307; Cooper's Est., 150 Pa. 576; Williamson's Est., 143 Pa. 150; Marshall's Est., 138 Pa. 260; Mannerback's Est., 133 Pa. 342; Smith v. Ayer, 101 U. S. 320.

The legal title to the trust estate is vested in the trustee, and not executed in the cestuis que trust by the statute of uses: Mannerback's Est., 133 Pa. 343 ; Harbster's Est., 133 Pa. 351 ; Stambaugh's Est., 135 Pa. 585.

The legal estate must be vested in a trustee in order to carry out the intention of testatrix and protect the spendthrift trust for Annie Margaret and separate use trust for Jeanette Moffit: Little v. Wilcox, 119 Pa. 439 ; Dodson v. Ball, 60 Pa. 492.

The power in the trustee to alter, vary or change the amounts coming to the children has been sustained in Horwitz v. Norris, 49 Pa. 213.  Examples of similar provisions are : Pepper's Ap., 120 Pa. 235 ; Beck's Ap., 116 Pa. 547 ; Wickersham v. Savage, 58 Pa. 365 ; Munby v. Ross, 30 L. R. Ch. D. 186 ; Meredith's Trusts, 3 L. R. Ch. D. 757 ; Brown v. Higgs, 4 Ves. Jr. 708.

*C. C. Dickey, W. K. Shiras* with him, for appellee.—A devise of income in such terms as are here used is a devise of the life estate : Mercur's Est., 151 Pa. 49 ; Lininger's Ap., 110 Pa. 398 ; Myer's Ap., 48 Pa. 26 ; Cox v. Rogers, 77 Pa. 160 ; Goe's Est., 146 Pa. 431 ; Beck's Est., 133 Pa. 51 ; Rife v. Geyer, 59 Pa. 393.

In the case in hand we find both the legal and equitable life estate in David Hutchinson, with absolute dominion over the property and a right to take the entire income, and the court below therefore held it liable for defendant's debts.  As the trusts for the benefit of the daughters (if there are any valid trusts) are in remainder after the life estate of the father, they are not stricken down or impaired.

Ashurst v. Given differs essentially from this.  In that case the trustee had no beneficial interest whatever in the estate in his hands, nor any power of disposition by will.  The will provided, what the law itself provides, that the trustee should be entitled to compensation out of the trust estate, and that compensation was fixed as " a reasonable support out of the trust fund for his personal services rendered."  In the case at bar, David Hutchinson is entitled to the entire income, not as a compensation for services, but as his absolute property.

OPINION BY MR. JUSTICE GREEN, December 30, 1893 :
The first clause of the will of the testatrix creates the inter-

est given to her husband.   The second clause creates the interest of the two daughters, but it is made "subject to all the provisions of the first clause."   Neither the interest of the daughter Jeanette Moffit, nor of the daughter Annie Margaret Hutchinson, commences or has any existence during the life of their father David Hutchinson.   The daughter Annie Margaret has no right to any income from the estate until after her father's death.   For the purposes of the present contention it is only necessary to determine whether the power of David Hutchinson over the income of the estate is absolute in him and unclogged by any trust for others during the term of his own life, for it is only his life estate that is proposed to be sequestered for the benefit of his own creditor.

To dispose of this question it is only necessary to consider the extent and character of the actual interest which he takes under the first clause of the will.   The words of the clause are: "First.  For the purpose of carrying out this my will, I give, devise and bequeath to my husband David Hutchinson, my entire estate, real, personal and mixed, in trust, he to have the entire control, so long as he may desire, of the same, and use so much of the income thereof as he may desire."   Then follows a provision that the income shall not be liable to any of his debts, present or future, except such as he may contract for improvements or repairs for the benefit of the estate.   The remaining provisions of the first clause of the will are simply to make sure and stable his right to take the entire income of the whole estate, to own it, use it, control it, dispose of it, without any liability to account for it to any one, particularly to the children of the testatrix.   To this end he is empowered to improve, sell, or incumber the real estate, "with the same effect as if he were the owner," except that in making deeds or mortgages he must execute them as trustee.   He is also empowered to make a last will and testament, and thereby "to alter, vary or change the amounts coming to the children," under the will of the testatrix, and "to designate the property and make a division of the same as he may deem best, and such division shall be binding and conclusive on all parties affected thereby."

As the ownership of the income during the life of David Hutchinson is the only important subject of inquiry, it is not

necessary to consider the rights and interests of the children or of others after his death.

It cannot be questioned, under all the authorities, that David Hutchinson is the absolute and uncontrolled owner of all the income of the entire property during all his life. He holds no portion of it in trust for his daughters or either of them. He is not bound to accumulate a single penny of it for them, or to hold any portion of it for them in any event. He is at perfect liberty to take the whole of it and do what he pleases with it, without any liability to account for it at any time. It is true the will says he is to take it in trust, but there is no trust specified, and as he alone has the absolute right to use and dispose of the whole of it, he is the only beneficiary of the so called trust, in other words he is the absolute owner of it. The following cases fully establish the correctness of this conclusion: Myer's Appeal, 48 Pa. 26; Cox v. Rogers, 77 Pa. 160; Lininger's Appeal, 110 Pa. 398; Goe's Estate, 146 Pa. 431; Mercur's Estate, 151 Pa. 49.

In Rife v. Geyer, 59 Pa. 393, it was said in the opinion, " whenever the entire beneficial interest is in the cestui que trust, without restriction as to the enjoyment of it, there is no reason why it should not be considered as actually executed," and we held that, in order to protect the estate from creditors, the legal estate must be in the hands of a trustee, and if the equitable estate became merged in the legal it could ·be immediately seized in execution by creditors.

In Beck's Estate, 133 Pa. 51, we sustained a testamentary provision, in favor of a daughter, that her share should not be liable to be attached or seized for her debts, and held, that, while it was in the hands of the executor in transit it was protected, but also said that the trust would end as soon as the money was paid to the legatee.

In the present case the income of this estate goes directly into the hands of the nominal cestui que trust, and it remains there because it is his own. If he is trustee at all it is for himself alone; there can be no intervening person clothed with the title and having a duty to perform of preserving the trust in order to pay the fund over to another who is its equitable owner. All the title to the money, legal and equitable, is centered in the one person, and the payment to that one person is the

only payment that can possibly be made. As a matter of course a person cannot declare a trust of his own property in his own favor, and, by making himself his own trustee, prevent his creditors from getting access to it. Yet there is no real difference between such a trust and this one.

The authorities cited by the appellee do not reach the state of facts which are present here. In Ashurst v. Given, 5 W. & S. 323, the trustee was clothed with the legal title to a large estate with which he was to carry on an extensive business, and he was entitled to nothing out of the property or the profits except a reasonable support for the service rendered. Other persons were to receive both the income and principal of the fund, except so much of the income as was necessary to support the trustee while performing his duties as such. In Overman's Appeal, 88 Pa. 276, the present question did not arise. It was a case of a perfectly good spendthrift trust in which the executors were the depositaries of the legal title, and the children entitled to the income were the cestuis que trust. It is true that one of the executors was one of the children, but that fact could not destroy the legal title of the trustees. As the terms of the trust prohibited liability for all debts and obligations, they operated just as certainly against a liability created by a devastavit as against any other form of indebtedness.

In Dickerson's Appeal, 115 Pa. 198, although the donor was himself the trustee, the trusts declared were not for his benefit, but for his children, as to whom it was perfectly competent to create a valid trust. The trustee took nothing under the trust.

The writer has carefully examined all the reported cases in which spendthrift trusts were sustained, but he has not found one, nor has any been referred to us, in which the trustee was also the cestui que trust, with the absolute ownership of the subject of the trust whether income or principal.

But in the case of Mackason's Appeal, 42 Pa. 330, we held that one sui juris cannot, as against creditors, either prior or subsequent, settle his property in trust for his own use for life, and over to his appointees by will, and, in default of such appointment, to the use of his lawful heirs in fee; that property so settled is assets in the hands of the trustees for the payment of debts, whether contracted prior or subsequent to the execution of the deed of trust; and the devisees or appointees under

the will of the settlor will be postponed to his creditors.    In this case the deed was made to third persons as trustees, and they were to pay over the net income of the estate to the grantor during his life, and to his appointees by will after his death, and in default of such appointment to such persons as would have taken the same under the intestate laws.    The deed of trust contained an absolute prohibition of any kind of debts, liabilities or engagement of the cestui que trust.    At the date of the deed the grantor was indebted, but all of that indebtedness was paid off by the trustees.    Before his death he again became indebted to the amount of about $6,000, and these debts were unpaid at his decease.    The trustees sold the property, invested the proceeds, paid him the income during his life, settled their account after his death, and the fund was then claimed by his creditors and his appointee.    The court decided in favor of the creditors.    Mr. Justice THOMPSON, in delivering the opinion, said : " This statement brings us to the simple inquiry, can the owner of property so dispose of it, for his own use, benefit and support, as to put it beyond the reach of liability for his future debts, he being and continuing sui juris, and there appearing to be no reason therefor except to withdraw it from such liability, and thus retain the temporal ownership without its incidents?    This would be a startling proposition to affirm. It would revolutionize the credit system entirely ; destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against frauds. . . .   The proposition is that such a settlor may be the complete equitable owner of all his property—deal as much as he pleases with it, and it shall not be liable for his debts."

The whole course of the reasoning is that a man shall not be the real owner of property with the full right to deal with it as he pleases, taking the full income of it to his own exclusive use, and keep the same free from the claims of his creditors.    What he cannot do for himself in this regard cannot be done for him by another.    When the grant comes from another and yet has these incidents, it is as obnoxious to the foregoing objections as when it arises upon his own grant to third persons as trustees for him.

Judgment affirmed.