## DuPuy's Estate.

Argued December 3, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* with him *Ella Graubart,* for appellants.

*Thomas V. Douglass,* for appellees.

*Elder W. Marshall,* with him *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE LINN, January 4, 1943:

Herbert DuPuy died in 1930 leaving a wife, children and grandchildren. Article 13 of his will provided for his widow for life with remainders over. She died August 31, 1941. Her executors, interpreting the will as having created a trust for her life and for remainders, filed, on her behalf as trustee "under [the] will of Herbert DuPuy for the benefit of herself and others," an account of the residue received by her from her husband's executors and desired distribution under his will. The property had depreciated in value during the time she held it but the parties agree the depreciation did not result from want of care. Exceptions to this trustee's account were filed on behalf of remaindermen on the theory that testator gave her a legal life estate and that, as an incident of such estate, she became indebted [1] to them for the cash value of the principal originally received; that her executors in an accounting for their

---

[1] See *Powell's Estate,* 340 Pa. 404, 409, 410, 17 A. 2d 391, citing cases.

administration of her estate must make good the loss to the remaindermen as her creditors.

The learned court below held that Mrs. DuPuy took an equitable life estate and dismissed the exceptions. The remaindermen have appealed and contend that Mrs. DuPuy took a legal life estate. The controlling question is whether her interest was legal or equitable; the answer to that question determines whether the beneficiaries under her will or the remaindermen under her husband's will must stand the depreciation.

The important provision of the will is article thirteen: "All the residue and remainder of my estate and property, real and personal, I dispose of as follows,—

"(A) If my wife, Amy H. DuPuy, shall survive me, I devise and bequeath the said property to her, for and during the term of her life, and she shall receive and retain, as her absolute property, the rents, issues, income and profits thereof accruing during her life. I hereby authorize and empower my said wife during her life to retain any and all of my investments or property, real and personal, which may come into her possession, under this Article of my will, or in her discretion, from time to time, to sell, absolutely and in fee simple or for any less estate (at public or private sales to such person or persons, for such price and upon such terms as she shall deem proper) convey and convert all or any part thereof, and from time to time, in like manner, to invest, sell, convey and reinvest the said property in such real estate, stocks, bonds, notes, mortgages or other securities as she shall deem to be safe and wise investments. She shall not be required to convert all or any part of said property into legal investments for trustees, or to invest any of the proceeds received from the sale or other disposition thereof, in legal investments for trustees. No purchaser of any property from my said wife shall be under any responsibility or liability for the application of the purchase-money. In holding or managing any real estate, which may at any time form a part of the property

to be held by my wife during her life, as aforesaid, I authorize and empower my said wife, from time to time, not only to lease the same in such manner, for such time, upon such terms and at such rental as she shall deem proper, but also to improve all or any part of such real estate by the erection of buildings or other improvements thereon or otherwise, and to repair, alter or remove the same as she shall deem proper and make all such expenditures in connection therewith as she may deem advisable, all such expenditures to be made from the principal of the funds or property in the possession of my wife as legatee or devisee for life under this will. My wife shall not be required to give any security as legatee or devisee for life, under this will.

"(B) If my wife, Amy H. DuPuy, shall not survive me, or upon her death, (in either event), I dispose of all the said property real and personal, as follows:

"1. I devise and bequeath one-half (½) of said residue and remainder of my estate and property, real and personal, to the trustee named in Article Fifteen of this will, in trust, for the three children of my son Charles M. DuPuy; . . .

"2. I devise and bequeath one-quarter (¼) of all the said residue and remainder of my estate and property, real and personal, to my daughter, Eleanor D. Merrick, absolutely, in fee simple and free from all trusts. . . .

"3. I devise and bequeath one-quarter (¼) of all the said residue and remainder of my estate and property, real and personal, to the trustee named in Article Fifteen of this will in trust, in equal shares, separately, for Herbert DuPuy Merrick, Marguerite Merrick and Rosetta R. Merrick, the three younger children of my daughter, Eleanor D. Merrick, her eldest child, Eleanor Reynolds Merrick, having been already liberally provided for by me through a certain Trust. . . ."

Article fifteen contained this provision: "During the continuance of the trusts created by any of the provi-

sions of this will, the principal sums or property thus held in trust for the said beneficiaries, respectively, and the income thereof, shall not be subject or liable to or for any contracts, debts, engagements or liabilities of such beneficiaries or any of them now or hereafter made, contracted or incurred, but shall be absolutely free from the same and the said beneficiaries shall have no power to sell, assign or encumber all or any part of said principal sums or property or their interests therein respectively, or the income thereof, or to anticipate said income."

If, as appellants contend, testator had intended to give his wife a legal life estate, and to require that by accepting the residue for the purpose of receiving and retaining ". . . as her absolute property, the rents, issues, income and profits thereof during her life", she became bound at her death to pay to the remaindermen ". . . cash [2] for the full amount distributed to her," it would have been unnecessary to add the provisions following the first sentence of Article 13 A. But he did add them, apparently not intending that his widow should guarantee the value of the residue; they have meaning and we are required to give them effect.[3] In disposing of the residue, he did not say that his wife should take the absolute title to it for all purposes; she was given "as her absolute property" only the ". . . rents, issues, income and profits, . . ." a significant distinction deliberately made by the testator. In Article 13 B, he provided for distribution of the "said residue" to specified remaindermen for whom, by 13 A, his wife held the title. He specified administrative powers over the residue until it should be distributable; powers that are peculiarly incident to the management, etc., of trust property, but which would have been unnecessary and

---

[2] *Weir's Estate*, 251 Pa. 499, 503, 96 A. 1086; *Reiff's Appeal*, 124 Pa. 145, 16 A. 636.

[3] Cf. *Byrne's Estate*, 320 Pa. 513, 516, 181 A. 500; *Davenport v. Graham*, 343 Pa. 497, 23 A. 2d 482; *Calder's Estate*, 343 Pa. 30, 34, 21 A. 2d 907; *Brennan's Estate*, 324 Pa. 410, 415, 188 A. 160.

in some respects without meaning if he had intended to grant a legal life estate. There would have been no occasion to confer authority ". . . during her life to retain any and all of my investments or property . . .", or to sell ". . . in fee simple or for any less estate (at public or private sales . . . for such price and upon such terms as she shall deem proper)," or ". . . to invest, sell, convey and reinvest the said property in such real estate, stocks, bonds, notes, mortgages or other securities as she shall deem to be safe and wise investments, . . ." or to provide that ". . . she shall not be required to convert all or any part of said property into legal investments for *trustees,* or to invest . . . proceeds . . . in legal investments for *trustees.*" [4] Why relieve her of such familiar duties of *trustees* if he was not thinking of her as trustee? It was unnecessary to provide any of those powers if he intended his wife to be a purchaser of the residue for a price then fixed but ultimately payable in cash to the remaindermen. The same thing is true of the other powers granted: that purchasers from her need not look to the application of the purchase money; the power to lease real estate ". . . in such manner, for such time, upon such terms and at such rental as she shall deem proper . . ."; the power to ". . . improve all or any part of such real estate by the erection of buildings or other improvements thereon or otherwise, and to repair, alter or remove the same as she shall deem proper and make all such expenditures in connection therewith as she may deem advisable . . . from the principal . . . in the possession of my wife as legatee or devisee for life under this will." These powers pertain to a trust relationship; the fact that he granted them is inconsistent with making her a mere debtor to remaindermen.

It is not a fatal objection that she was trustee for herself as well as for remaindermen [5] or that, if her

---

[4] Italics supplied.

[5] *Fox's Estate,* 264 Pa. 478, 479, 107 A. 863; *Faunce v. McCorkle,* 321 Pa. 116, 118, 183 A. 926; *Watson's Estate,* 241 Pa. 271, 280, 88 A. 433; Restatement, Trusts, section 99.

interest was equitable, a spendthrift trust provision was provided. Appellants refer to *Hahn v. Hutchinson,* 159 Pa. 133, 28 A. 167. The case dealt with income only; it appeared that Hahn, a judgment creditor of Hutchinson, issued execution and levied on the life estate of the defendant Hutchinson, given to him by the will of his wife. Hahn obtained a rule on Hutchinson to show cause why the income should not be applied to the judgment. Hutchinson answered by averring that the income was not subject to attachment. The rule was made absolute and the appeal followed. The court considered the substance of the transaction and concluded that, though the testatrix stated that she gave her property to her husband "in trust", the words "in trust" were inconsistent with the fact; he was, as the court said, ". . . the absolute and uncontrolled owner of all the income of the entire property during all his life;" the sequestration order was affirmed. It was unnecessary to deal with the provisions of the will giving contingent interests to two daughters, because the only question was whether defendant could keep the income from his creditors; that was the issue decided. In *Wanner v. Snyder,* 177 Pa. 208, at 211, 35 A. 604, 605, GREEN, J., who wrote the opinion in the *Hahn* case, said: "The decision in *Hahn v. Hutchinson* was based upon the absolute ownership of the income by the legatee. We held that there could be no valid spendthrift trust where the trustee is also the cestui que trust with the absolute ownership of the subject of the trust, whether income or principal. We followed and applied that ruling in the subsequent case of *Ehrisman v. Sener,* 162 Pa. 577, where, also, the devise was by a wife to her husband. The estate, real and personal, was devised to the husband for life with an expressed direction that no incumbrances or liens should be placed upon the property during the life of the husband, and that it should not be liable for any debts he might contract." The *Hahn* case did not decide that Hutchinson was not trustee to support the remainders

contingently given to the daughters. The problem that might have been presented if, in Mrs. DuPuy's lifetime an effort had been made to take the income for her debts, is not presented by this record. Testator provided that his wife should hold the legal title to the residue for the benefit of the remaindermen. It is these remaindermen on whose behalf this appeal is taken. They can only take the residue subject to the lawful conditions imposed by their testator. They cannot challenge the title given to their trustee. He specified what he intended should pass, by giving in 13 B, certain fractions ". . . of said residue and remainder of my estate and property, real and personal . . ." to designated remaindermen. There is nothing to show that he intended to obligate his widow to pay the cash value of the residue she received from her husband's executors. As we understand the will, it means just the contrary; that the remaindermen enjoy the residue which, under 13 A, had been held by her subject to a number of provisions applicable only to trust estates.

It is said on behalf of appellants, that "it is not unusual for a testator creating a life estate to add words which are unnecessary." That is true, and unnecessary provisions frequently create difficulties of construction. A testator may give a legal life estate and provide that the debtor-creditor rule shall not be applied but that the remaindermen shall take the risk of depreciation in value. If, instead of saying so by direct expression, he adds provisions which, because of their technical meaning, show that he intended that the estate should be equitable and not legal, the court may not reject the limitations; the result, as a consequence of the rule, making the trustee liable for due care and not as an insurer, will be the same; the depreciation will be on the parties taking in remainder.

Decree affirmed; costs to be awarded by the court below.