## Krewson Estates

*Albert F. Maier*, for petitioner.

*George L. Fenner, Jr.*, contra.

SELECKY, P. J., March 25, 1959.—This matter comes before the court on a petition for a declaratory judgment in which Albert F. Maier, Esq., executor of the

estate of Elizabeth Krewson, deceased, requests a declaration of his rights, under her will, as such executor, in the matter of 120 shares of common stock of the Bethlehem Steel Corporation registered in the name of "Elizabeth Krewson as surviving executrix of the estate of Jesse Krewson", and more particularly prays for a declaratory judgment that said 120 shares of said stock are assets of the estate of Elizabeth Krewson. Such a declaration is contested by Robert Ramsey Mevane, grandnephew, who was bequeathed "any principal that may remain" after the death of Elizabeth Krewson by the will of Jesse S. Krewson, the husband of Elizabeth Krewson, who predeceased her.

This stock, then consisting of 10 shares of common stock of the Bethlehem Steel Corporation, was an asset, then inventoried at $550, in the estate of Jesse S. Krewson, who died on November 19, 1943, leaving a will, probated to estate no. 1252 of 1943, in which, after devising all of his real estate to his wife Lizzie, or Elizabeth, with remainder to his daughter Ellena, then provided, in paragraph 2 of said will:

"2. Any stocks and bonds I may have at my death I direct be registered in the names of both my wife, Lizzie and my daughter, Ellena, and the income thereof to be controlled by my wife, during her life or until she remarries, and at her death or remarriage, I give and bequeath it to my daughter, Ellena, with power to consume the principal, with remainder to her issue in such proportion as she shall by will appoint, and in default of appointment, equally.

"Should my daughter die without issue, then at her death and the death of my wife, any principal that may remain I give and bequeath to my grandnephew, Robert Ramsey Mevane and his issue, and if he should die before that time, without issue, then I give and bequeath it to my legal representatives in such proportions as they would take under the intestate laws.

"Should my daughter, Ellena die before my wife, without issue, then I direct and provide that my wife, Lizzie, have power to consume the principal for her support; it being my desire that the care and support of my wife and daughter and her issue, be the first consideration, and that any surplus remaining at their death without issue, go to my legal representatives as indicated in this item.

"I also direct and provide that should my wife, Lizzie, through illness or other cause be unable or incapitated (obviously, meaning "incapacitated") from managing such estate, my daughter, Ellena, have full authority to do so in her stead."

In the estate of Jesse S. Krewson, at the time of his decease, were 10 shares of common stock of Bethlehem Steel Corporation, which apparently, by various increments, amounted to 120 shares of common stock of the Bethlehem Steel Corporation at the time of the death of his widow, Elizabeth Krewson, on May 9, 1958, which stock was found in the safe deposit box of Elizabeth Krewson, registered in the name of "Elizabeth Krewson as surviving executrix of the estate of Jesse Krewson".

Jesse S. Krewson, in his "desire that the care and support of my wife and daughter and her issue be the first consideration", directed, in his will, that his "stocks and bonds . . . be registered in the names of both my wife, Lizzie and my daughter, Ellena, and the income thereof to be controlled by my wife, during her life or until she remarries, and at her death or remarriage, I give and bequeath it to my daughter, Ellena, with power to consume the principal . . ."

It will be noted that he bequeathed only the income to his wife, in the first instance, for life or until remarriage, because, if the latter event occurred, testator apparently expected her chosen spouse to support her. He did not give her the power to consume the principal,

but gave the power to consume to his daughter Ellena, should Ellena survive his wife. It was only in the event that his daughter Ellena predeceased his wife (Ellena did predecease her mother, without issue) that he gave his wife the power to consume the principal for her support (apparently remarriage after the death of his daughter, Ellena, would not have terminated his widow's right to income and to consume the principal, but that matter is moot, since Elizabeth Krewson did not remarry prior to her death).

Powell's Estate, 340 Pa. 404 (1941), cited with approval in Hays Estate, 358 Pa. 38 (1947), clearly indicates that a life tenant with the right to consume was not a "trustee . . . but . . . debtor for the fund named, which was adjudicated and distributed to her by the court's decree", on audit in the husband's estate: Powell's Estate, cited supra, at page 409. Section 13 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.13, which provides that such a life tenant, with power to consume, shall be "deemed to be a trustee . . . not a debtor to the remainderman . . .", did not become effective until January 1, 1948, and is not applicable to this will. Hays Estate, supra, at page 43.

In his able brief for Robert Ramsey Mevane, George L. Fenner, Jr., Esq., however, points to the language in Lyman Estate, 366 Pa. 164 (1950), for authority that the testamentary intent must be construed in the light of the law extant at the time of the execution of Jesse S. Krewson's will on August 22, 1928. At page 169, the Supreme Court stated, in Lyman Estate, cited supra:

"As the law stood in 1926 when he executed his will, a life tenant with power to consume had never been held to be a debtor of the remainderman. Such a life tenant was then spoken of as a 'quasi trustee' for herself and the remaindermen [citing case]; and, the remainderman was not a creditor of a life tenant having

a right of consumption [citing case]. The rule of debtor-creditor relationship, which has pertained to an ordinary life tenancy, was not extended to a life tenancy with power of consumption until the decision in Powell's Estate in 1941. The testator cannot, therefore, be presumed to have intended to impose a legal liability upon his wife, as life tenant, which extant rules of construction did not then impose on the character of life estate which he bequeathed."

The test phrase in this citation, however, is that: "The testator cannot, therefore, be *presumed* to have intended to impose a legal liability upon his wife . . . ," etc. The Supreme Court, in Lyman Estate, refused to "presume" such an intention. The court stated: "There is no occasion for resort to rules of construction," at page 171, but, although "the testator did not employ technical terms from which a trust could be inferred," at page 169, as in DuPuy's Estate, 346 Pa. 143 (1943), the language actually used in the will was such that: "In the light of the express terms of the will, the testator could not have thought that a debtor and creditor relationship between his wife and the remaindermen with respect to his residuary estate could arise during the lifetime of the widow": Lyman Estate, supra, at page 170.

We are thus led back to the principle: "The scope of the inquiry is limited to the meaning of what the testatrix [here the testator] said" (Farmers Trust Company v. Wilson, 361 Pa. 43 (1949), at 47) not what he is "presumed" to have intended.

In the instant will, Jesse S. Krewson did not "employ technical terms from which a trust could be inferred," as in DuPuy's Estate, 346 Pa. 143 (1943). On the contrary, he directed that any stocks and bonds he may have at his death "be registered in the names of both my wife, Lizzie and my daughter, Ellena" both of whom were to receive, consecutively, the in-

come therefrom, certainly not the law of a trustee relationship. See Rumsey's Estate, 287 Pa. 448 (1926) at page 453; Tyson Estate, 191 Pa. 218 (1899), at page 229. This gave the life tenants complete freedom in converting these stocks, without being subject to the test that such conversion be "an honest exercise of the discretion with which the testator has clothed" them, as set up in Tyson Estate, cited supra. No such restriction was made, nor intended, by the language of this will. Jesse S. Krewson gave his wife complete authority to treat this stock as her own, which created a debtor-creditor relationship only as to the unconsumed principal at the time of her death. The mere fact that his wife registered the stock in the name of "Elizabeth Krewson as surviving Executrix of the Estate of Jesse Krewson" did not reduce her rights therein. As stated by the Supreme Court in Hays Estate, 358 Pa. 38 (1947), at page 41:

" 'The fact that the stock was not transferred on the books of the company to her at that time is unimportant. She could have it transferred at any time. Her failure to do so cannot alter the rights of the parties.' "

We must execute his will accordingly. We, therefore, make this

### Declaratory Judgment

That said 120 shares of common stock registered in the name of "Elizabeth Krewson as surviving Executrix of the Estate of Jesse Krewson" are in fact an asset of the estate of Elizabeth Krewson, and Albert F. Maier, as executor of the estate of Elizabeth Krewson, deceased, be and he is hereby authorized and directed to administer it as such, and, further, that Robert Ramsey Mevane is hereby declared a creditor of the estate of Elizabeth Krewson, deceased, in the sum of $550, the inventory value of said stock

as of the date of death of Jesse Krewson, namely, November 19, 1943, since said stock has not been consumed by Elizabeth Krewson.