# Hood, Appellant, *v.* Pennsylvania Society to Protect Children from Cruelty.

*Wills—Construction—Intention—Change of law by judicial decision.*

While it is the general rule that when a judicial decision is rendered the law is not presumed to be changed by it, but to have been the same before as after, although previous decisions may have been to a different effect, the rule is met, in the interpretation of wills, by the cardinal and controlling principle that the intention of the testator must prevail.

Where at the date of a will it was generally accepted as the law that a gift of a life estate to a daughter and after her decease then to her children "her surviving" gave the daughter's daughter a vested remainder, the actual intent of the testator will be considered as what it would have been understood to be by the law as it existed at the date of the will.

Argued March 25, 1908.    Appeal, No. 391, Jan. T., 1907, by plaintiffs, from decree of C. P. No. 4, Phila. Co., Dec. T., 1905, No. 2,715, dismissing bill in equity in case of Bessie D. Hood and DeWitt Clinton Derringer v. Pennsylvania Society to Protect Children from Cruelty. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ.    Affirmed.

Bill in equity to remove cloud on title.    Before WILLSON, P. J.

The bill alleged that under the will of William Patterson, deceased, his daughter, Mary Jane Patterson, took only a life estate in the real estate in question, and that the interest of Mary A. Smith, the daughter of the said Mary Jane Patterson, in the premises was in the nature of a remainder contingent upon her surviving the said Mary Jane Patterson, and that, therefore, the said Mary Jane Patterson and Mary A. Smith and her husband were not vested with an estate in fee in the premises, and that a mortgage executed by them was not operative to convey to appellee the interest of appellants in the premises.    The bill further recited that said mortgage was null and void as to appellants, and that its existence created a cloud upon the title of appellants in said premises.

WILLSON, P. J., filed an opinion which was in part as follows:

It was claimed on the part of the plaintiffs that Mary Jane Patterson took only a life estate in the premises before mentioned, that said Mary A. Smith's estate in the same was in the nature of a remainder contingent upon her surviving her mother, the said Mary Jane Patterson, and that, therefore, the said Mary Jane Patterson, Orley M. Smith and Mary Ann Smith were not vested with an estate in fee in the said premises, and that the said mortgage deed was not operative to convey to the mortgagee the interests of the plaintiffs therein.

It is claimed on behalf of the defendant that, at the time when the will under construction was made, as well as when the mortgage in controversy was executed, the life tenant, Mary Jane Patterson, and her daughter, Mary A. Smith, together with the husband of the latter, were together vested with the entire estate in the premises, and were, therefore, fully competent, under the law, to execute the mortgage in question, and thereby to subject the whole estate in the prem-

ises to the lien of the mortgage. Several cases have been referred to us as sustaining this proposition, viz.: Manderson v. Lukens, 23 Pa. 31; Womrath v. McCormick, 51 Pa. 504; Laguerenne's Estate, 15 Phila. 553; McClure's Appeal, 72 Pa. 414; and Muhlenberg's Appeal, 103 Pa. 587.

I do not understand that on behalf of the plaintiffs any opposition is made to this position of the defendant. Whether or not that be so, the cases referred to seem to me, beyond all controversy, to sustain the defendant's point. Though the language of the wills which were under construction in the cases just cited was not in any instance identical with the language of the will now under construction, every essential element in the present case which would go to determine the nature of the estate that was taken by Mary A. Smith was covered by the cases mentioned, and, under those cases, I have no hesitation in reaching the conclusion that, at the time when the mortgage was made, the law of Pennsylvania was to the effect that Mary A. Smith held a vested estate in remainder in the premises in question, and, therefore, that she, along with her mother, Mary Jane Patterson, and her husband, were possessed of the entire estate in the property, and had full legal power to execute the mortgage and thereby subject the entire estate in the property to the lien of the mortgage. At the same time, it must be admitted, and it is admitted by counsel for both the plaintiffs and the defendant, that the law of Pennsylvania upon the subject under consideration has since been differently stated, and that if the present controversy is to be determined according to the view which is now taken in our state of the nature of such an estate as was created by the will, it would be necessary to reach the conclusion that Mary A. Smith took only a contingent estate under the will, that upon her death the entire estate in fee vested in her children, the plaintiffs, and that, therefore, the estate of the plaintiffs is not bound by the mortgage.

In this state of the controversy it only becomes necessary to consider whether the rights of the parties shall be determined according to the construction which the law would have given to the will at the time the will was made and the mortgage was executed, or whether such rights shall be determined according to the law as it exists at the present time.

It is true, as a general principle, that when courts of a given jurisdiction depart from a rule of construction applied, e. g., to the language of wills, and adopt another at variance therewith, it is to be regarded as an expression of a judgment by the courts that the law as modified was always the correct view to take of a particular question, and that earlier expositions of the law were erroneous. It is, however, equally true that, where judicial decisions have given to certain language a definite construction and meaning, the intention of the testator in the use of such language can only be reached by giving to the words employed by him in his will the meaning which had been fixed by judicial determination at the time when the will was made or when it went into effect. Such a course would seem to be necessary in order to avoid the thwarting of a testator's intentions and to prevent the doing of great wrong to those who may have acquired estates or entered into obligations upon the faith of the law being that which it had been decided to be. In the construction of every will it is incumbent upon the courts to endeavor to ascertain the intention of the testator. To do this is of more importance than to adhere to a rule of construction. In any case, how can the intention of the testator in the use of certain words be better determined than by knowing what meaning the courts have attached to such words? In the case in hand, William Patterson used certain language disposing of his real estate. According to the settled construction given to such language by the courts at the time he made his will and when he died, his daughter, Mary A. Smith, took a vested estate in remainder in the property which is now in controversy. Must we not necessarily draw the inference that he intended she should have such an estate, and, therefore, that she should have the right, along with her mother and husband, to execute such a mortgage as the defendant took? On the faith of the law as it was then interpreted the defendant presumably parted with money, to secure the return of which the mortgage was given. The rights of the defendant may be regarded as having then been settled according to a proper interpretation to be given to the will of the testator. Under such circumstances, I deem it entirely proper to conclude that the action of the testator's widow and daughter in making the mortgage in question was

strictly in accordance with the rights and estate which the testator intended to confer upon them, and that the rights of the defendant should now be determined with reference to the character of the estate which, under the law as it then existed, the testator must be regarded as having intended to confer upon his daughter, and not according to what the courts at the present time would regard as the intention of a testator under a different view as to the construction to be placed upon such language as was used in the will in question.   I may add that it is somewhat indicative of the intention of the testator that in his will he charged certain annuities and legacies " upon the said remainder and residue of my estate herein devised to my daughter, Mary Jane and her children, in order that they may be paid out of the same." The language just quoted apparently indicates that it was the understanding of the testator that the entire estate in the property in question would, under the provisions of his will, vest in his daughter, Mary Jane, and her children, and this view tends to corroborate the opinion already expressed by me.

The court dismissed the bill.

*Error assigned* was decree dismissing the bill.

*B. F. Pepper*, with him *G. W. Pepper* and *Bayard Henry*, for appellants.—Between 1850, the date of the will, and 1884, the date of the mortgage, the decisions of the courts of Pennsylvania, in cases involving the interpretation of wills analogous to the Patterson will, were in great confusion, and it was impossible to formulate from them any clear rule for the construction of such wills.

Assuming, for the sake of this argument only, that, between 1850 and 1884, it was well settled by judicial decision that words similar to those appearing in the Patterson will would create a vested remainder, nevertheless this court will follow its later decisions under which the remainder must be held to be contingent: Haskett v. Maxey, 134 Ind. 182 (33 N. E. Repr. 358) ; Centre School Twp. v. Board of School Commissioners, 150 Ind. 168 (49 N. E. Repr. 961) ; Kenyon v. Welty, 20 Cal. 637 ; Allen v. Allen, 95 Cal. 184 (30 Pac. Repr. 213) ; Alferitz v. Borgwardt, 126 Cal. 201 (58 Pac. Repr. 460).

A change by statute is only for the future.  A change by decision is retrospective, and makes the law at the time of the first decision as it is declared in the last decision, as to all transactions that can be reached by it : Storrie v. Cortes, 90 Texas, 283 (38 S. W. Repr. 154) ; Bradshaw v. Mill Co., 52 Minn. 59 (53 N. W. Repr. 1066) ; Ray v. Western Penna. Nat. Gas Co., 138 Pa. 576.

*John G. Johnson,* for appellee.—Language similar to the present, in accordance with the settled decisions of this court as the same stood at the time of its use, was understood as giving a vested remainder to a person situated as was Mary Ann Smith, the daughter of Mary Jane Patterson : Mulliken v. Earnshaw, 209 Pa. 226 ; Frame v. Stewart, 5 Watts, 433 ; Manderson v. Lukens, 23 Pa. 31 ; Womrath v. McCormick, 51 Pa. 504 ; McClure's App., 72 Pa. 414 ; Muhlenberg's App., 103 Pa. 587 ; Laguerenne's Est., 15 Phila. 553 ; McBride v. Smyth, 54 Pa. 245 ; Buzby's App., 61 Pa. 111 ; Delbert's App., 83 Pa. 462 ; Woelpper's App., 126 Pa. 562.

The present will must be interpreted in accordance with the meaning of the language as understood at the time of its making by the Supreme Court of Pennsylvania, and necessarily by the legal profession : Ray v. Gas Co., 138 Pa. 576 ; Quin's Est., 144 Pa. 444 ; Mulliken v. Earnshaw, 209 Pa. 226 ; Seybert v. Hibbert, 5 Pa. Superior Ct. 537 ; George v. Morgan, 16 Pa. 95 ; Lisle's Est., 22 Pa. Superior Ct. 262 ; Carroll v. Burns, 108 Pa. 386 ; Bellerjeau's Est., 18 Phila. 83 ; Gelpcke v. City of Dubuque, 68 U. S. 175.

Per Curiam, May 25, 1908 :

It is quite true, as urged by the appellants, that when a judicial decision is rendered the law is not presumed to be changed by it, but to have been the same before as after, although previous decisions may have been to a different effect. This is the general rule, but it is not to be applied in all cases without discrimination.  On the subject of interpretation of wills it meets the cardinal and controlling principle that the intention of the testator must prevail.  It is undeniable that this principle had in certain classes of cases been so overlaid and hedged in by arbitrary canons of construction as to be-

come a subordinate instead of a dominant rule. As was said in Mulliken v. Earnshaw, 209 Pa. 226, " The want of harmony in the cases dealing with the period to which the words 'then living,' or similar phrases, in a will should be applied, arises mainly from the artificial canon of construction that the period intended is presumed to be the death of the testator. The canon itself grew out of the preference in the policy of the law, in all doubtful cases, for vested rather than contingent interests. Like all artificial rules it had the constant tendency to become an arbitrary fetter, instead of a mere instrument for the ascertainment of the testator's intent. The policy of the later cases in this state, if not everywhere, is to get back to the true rule of looking only to the actual intent. There is no sound reason in the nature of things why the actual meaning of the person using the words should not be sought in the case of a will exactly as it is in the case of a contract."

In the present case, therefore, as in all others, the question is, what was the intention of the testator, and that is to be ascertained by what the testator understood to be the legal meaning of his language at the time he used it. It is practically conceded that at the date of the testator's will the gift of a life estate to his daughter and after her decease then to her children " her surviving," gave the daughter's daughter a vested remainder. That being the generally accepted meaning of the language at the time the testator used it, must, in the absence of anything to the contrary, be accepted as the expression of his actual intent.

On this point we adopt what was said by the learned judge below.

Decree affirmed.