# Letterle's Estate.

*Decedents' estates—Wills—Life estates — Personal property — Act of May 17, 1871, P. L. 269—Investments—Profits—Disposition on death of life-tenant.*

Where personal property is given to one for life with remainders over and the life-tenant takes possession thereof, giving a bond for the protection of the remainder interests as required by the Act of May 17, 1871, P. L. 269, the life-tenant may use the property at his own discretion, and upon his death his estate will be entitled to any profit made in the investment thereof. Such life tenant is not a trustee for the remaindermen, but is their debtor and his estate will be liable only for the appraised value of the property at the time when it was received.

Argued Jan. 6, 1915. Appeal, No. 204, Jan. T., 1914, by W. P. Barba, Executor of the Estate of Christina Miller, deceased, from decree of O. C. Philadelphia Co., July T., 1899, No. 267, dismissing exceptions to adjudication in Estate of Gottlieb Letterle, deceased. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication. Before GEST, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions in the opinion by DALLETT, P. J. W. P. Barba, executor of the Estate of Christina Miller, deceased, appealed.

*Error assigned* was in dismissing the exceptions.

*Henry B. Patton,* for appellant.

*Daniel A. Stewart,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, February 8, 1915:

In the will of Gottlieb Letterle, who died in 1898, there

is the following provision: "I do give devise and bequeath the free use possession enjoyment benefit and advantage of all the Rest Residue and Remainder of my estate Real, Personal and Mixed whatsoever and wheresoever the same may be situate and of which I may die seised possessed or in any way entitled to unto my beloved wife, Catharine Letterle, for and during all the term and time of her natural life she to pay all taxes, water rents and the cost and expense of keeping the real estate in good order and repair. And from and immediately after the decease of my said wife, Catharine Letterle, I do will as follows; that is to say, ...... I do give, devise and bequeath one full equal moiety or half part thereof unto such persons as would be and are my heirs under the Intestate Law of the Commonwealth of Pennsylvania and in such parts and shares as the said laws provide." Letterle's executor—a trust company—filed its account, which was duly audited by the court below. By its decree one-half of testator's estate was awarded to his widow, the court having held that the limitation over of that moiety to her heirs vested the same in her absolutely, and it was ordered that the other half be delivered to her upon her entry of security, to be approved by the court, for the protection of the interests of the remaindermen, her husband's heirs, to take effect upon her death. In November, 1899, she gave a bond, with approved security, in the sum of $25,000, and the assets handed over to her in pursuance of it were valued at $12,010.58. She subsequently sold some of the securities included in these assets at a loss, but a large gain resulted from her sale of 100 shares of Lehigh Valley Railroad stock for $10,337.50, which had been awarded to her ten years before at a valuation of $2,700. She died in 1913, and her executor filed an account of the fund which had been awarded to her as life-tenant. The account showed an increase of $5,454.20 over the value of the fund at the time it was awarded to her. This increase is claimed by her executor as belonging to her es-

tate, on the ground that the heirs of her husband are entitled only to the exact value of the estate as it originally passed to her upon her giving bond to secure the remaindermen, while they, in turn, claim to be entitled to the estate as it now exists. The auditing judge, sustained by the court below, awarded the estate to the heirs of Gottlieb Letterle as originally valued, and gave the increase to the estate of his widow. The correctness of this is the question before us.

( The bond which Catharine Letterle gave was given under the provisions of the first section of the Act of 1871, P. L. 269, which provides that "whenever any personal property, or the increase, profits or dividends thereof, has been or shall hereafter be bequeathed to any person, for life, or for a term of years, or for any other limited period, or upon a condition or contingency, the executor or executors, administrator with the will annexed, or trustee or trustees under such will, as the case may be, shall deliver the property so bequeathed to the person entitled thereto upon such person giving security in the Orphans' Court having jurisdiction of the accounts, in such form and amount as, in the judgment of the court, will sufficiently secure the interest of the person or persons entitled in remainder, whenever the same shall accrue or vest in possession."

The testator did not direct that one-half of his residuary estate should be held in trust for the use and benefit of his widow for life, the principal to be paid over to his heirs upon her death, but gave. to her "the free use, possession, enjoyment, benefit and advantage" of the same for and during the term of her natural life. (By complying with the Act of 1871 she became entitled to take, and did take, into her possession the one-half of the estate of her husband, but not as trustee for herself and her husband's heirs. The property became hers "for her free use possession enjoyment benefit and advantage," with an obligation resting upon her to secure the unimpaired value of it to the remaindermen

upon her death. In Hubley's Est., 16 Philadelphia, 327, the court below, in speaking of the Act of 1871 and of the effect of the giving of a bond under it, said: "The power of the life-tenant to use the property at his own discretion is there practically unlimited, and the rights of the reversioner are fixed by the bond. The former takes the risk as well as the advantages of speculation; the latter, while he can take no more is sure of receiving no less than the original value of the principal." This we approved on an appeal to January Term, 1884, No. 355. If a life-tenant must bear the loss resulting from a depreciation in the value of a fund awarded to him under the Act of 1871, which can be done only at his instance, why should he not be entitled to the gain, if any? He risks all; the remaindermen nothing, for the bond, with approved surety, takes the place, as to them, of the fund ultimately to go to them. We need not, however, pursue this any further, for the question raised by the appellant ought not to be regarded as an open one, in view of what we held in Reiff's App., 124 Pa. 145. In that case a bond had been given by a life-tenant under the provisions of the Act of February 24, 1834, P. L. 70, similar in purpose and effect to the Act of 1871. Upon the death of the life-tenant her executor included in his account the fund received by her upon her giving a bond, and claim was made at the audit that a part of the expenses of settling her estate should be deducted from that fund on the ground that it constituted a trust of which she had been trustee. The learned president judge of the court below, in holding that this could not be done, said: "The result [the giving of the bond] was in effect to make the sum thus received by testatrix a part of her individual estate. It could be invested by her in the purchase of real estate, embarked in mercantile adventures or stock speculations, or expended in her living and family expenses as she deemed advisable. The money became essentially her own; and she was simply a debtor to the parties

ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of testatrix, and entitled to interest from the date of her death." This we approved in affirming the decree of the lower court.

Appeal dismissed and decree affirmed at appellant's costs.