## Erdman Estate.

Argued April 11, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Isadore Rapoport,* with him *Julius M. Rapoport* and *Groman & Rapoport,* for appellant.

*R. C. Mauch,* with him *Mauch & Goodman,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1945:

A fiduciary upon whom a surcharge was imposed by the Orphans' Court of Northampton County appeals on the ground that the court was without jurisdiction.

A. E. Erdman, a resident of Nazareth, Northampton County, died August 9, 1922, leaving a will wherein he gave to his wife, Clara V. Erdman, "the income of my estate, both real, personal and mixed, of whatsoever kind, wheresoever situated, during her natural life, and she to have sole charge of my estate, invest and reinvest, and in case she desires to sell any real estate or personal property, she is hereby authorized so to do". Certain legacies were to be paid after his wife's death, and the residue was bequeathed to his sister "in trust during her natural life" and at her death was to be divided among his uncles and aunts. The wife was appointed executrix of the will "during her natural life", and Daniel Eisenhart was to serve as executor thereafter.

On June 26, 1923, the widow filed in Northampton County what she designated as her first and final account as executrix. It showed gross assets amounting to $19,-785.06 and claimed credits for the payment of debts, taxes and administration expenses in the sum of $11,-373.97; included in the credits was one of $6,000 "for money owing accountant". The net balance, amounting to $8,411.09, was made up of cash and certain uncon-

verted assets consisting of stocks, bonds and a mortgage. The account was confirmed nisi on September 10, 1923; no exceptions having been filed, and, there being no separate Orphans' Court in that district, the confirmation became absolute fifteen days thereafter without audit or decree of distribution in accordance with the Act of June 7, 1917, P. L. 447, section 47(c) and the rules of practice then prevailing in Northampton County.

The net assets were taken over by the widow without filing a bond. She died November 1, 1941, a resident of Allentown, Lehigh County. By her will she appointed her nephew Rufus W. G. Wint executor and bequeathed to him her residuary estate. On April 21, 1943, Wint filed in Northampton County what he called his first and final account as "Executor of the will of Clara V. Erdman, deceased, who was the Executrix of the will of A. E. Erdman, deceased". In it he listed as a debit the balance of $8,411.09 shown by the original account of Clara V. Erdman, but he claimed credit for $6,401.09, representing the value of such items constituting this balance as had been consumed by the widow in her lifetime, only items of the value of $2,010 remaining in her possession at her death. He also claimed credit for $6,000, the amount of a note, under seal, of A. E. Erdman, dated February 8, 1909, payable without interest "after the decease of my wife Clara V. Erdman . . . to her executor, administrator or assigns", this note having been found by Wint in an envelope marked "Estate of A. E. Erdman". It represented presumably the same indebtedness as the item of $6,000 "for money owing accountant" which had already been allowed as a credit in the 1923 account; it is therefore not clear why a credit for it was again requested, and the claim was properly rejected.

The court imposed a surcharge upon the accountant in the sum of $6,401.09 because—since the widow had

not been given any right to principal—she had to account for the assets she consumed. By obvious error the court imposed an additional surcharge of $6,000 arising from its disallowance of credit for the note; while the disallowance was proper it is clear that the executrix could not be held to account for more than the net balance stated in her original account; the effect of the surcharge was to eliminate the credit item of $6,000 there listed, and this the court had no right to do because that account, having been confirmed 20 years before, was res adjudicata as to all the items contained therein. Incidentally, it may be added that even though the note itself was apparently never delivered to the widow it is entirely possible that the sum of $6,000 was owed to her by her husband because of a loan which the note may have been intended to represent.

Appellant challenges the surcharge of $6,401.09 on the ground that the court had no jurisdiction to audit his account, this contention being based upon the principle [1] that where there is a bequest of a life estate, and the assets are taken into the possession of the life tenant, they become the life tenant's absolute property, whether or not [2] security is entered in accordance with the Act of June 7, 1917, P. L. 447, section 23; the life tenant is thenceforth merely a debtor to the parties entitled at his death. Accordingly appellant insists that, whatever might be the widow's liability for the assets of her husband's estate which she had improperly consumed, it can be enforced only by the remaindermen proceeding against her estate in the Orphans' Court of Lehigh County where she resided, that there was no duty on her part for any further accounting in her husband's

[1] *Reiff's Appeal*, 124 Pa. 145, 16 A. 636; *Letterle's Estate*, 248 Pa. 95, 93 A. 935.

[2] *Kirkpatrick's Estate*, 284 Pa. 583, 131 A. 361; *Powell's Estate*, 340 Pa. 404, 17 A.2d 391; *Gillett's Estate*, 130 Pa. Superior Ct. 309, 197 A. 517.

estate in Northampton County after the confirmation of her original account, and that therefore the filing of an account there by appellant as her executor was a nullity.

The weakness of appellant's position lies in his failure to distinguish between those cases in which a life tenant is bequeathed a legal estate and those where the will imposes a trusteeship upon the life beneficiary. Here the widow was not given a legal estate but only the income during her life; she was never, merely as life tenant, to have title to or possession of the principal; the will gave her complete charge of the estate with the mandate to invest and reinvest the assets, thus conferring upon her the authority, and imposing upon her the liability, of a fiduciary, in which capacity alone was she entitled to take over the assets. What was said in regard to the will discussed in *DuPuy's Estate*, 346 Pa. 143, 147, 148, 29 A. 2d 689, 691, 692, is here peculiarly applicable: "If . . . testator had intended to give his wife a legal life estate, and to require that by accepting the residue for the purpose of receiving . . . '. . . the . . . income . . . thereof during her life', she became bound at her death to pay to the remaindermen '. . . cash for the full amount distributed to her,' it would have been unnecessary to add the provisions following the first sentence of Article 13 A [of the will]. . . . In disposing of the residue, he did not say that his wife should take the absolute title to it for all purposes; she was given . . . only the '. . . income, . . .' a significant distinction deliberately made by the testator. . . . He specified administrative powers over the residue until it should be distributable; powers that are peculiarly incident to the management, etc., of trust property, but which would have been unnecessary and in some respects without meaning if he had intended to grant a legal life estate. There would have been no occasion to confer authority '. . . during her life to retain any and all of my investments or property . . .', or to sell . . .

or '. . . to invest, sell, convey and reinvest the said property . . .'. . . . It was unnecessary to provide any of those powers if he intended his wife to be a purchaser of the residue for a price then fixed but ultimately payable in cash to the remaindermen. . . . These powers pertain to a trust relationship; the fact that he granted them is inconsistent with making her a mere debtor to remaindermen."

So here, if the testator had intended that his wife should take possession of the assets and thereafter become merely a debtor to the remaindermen there would have been no reason for him to have given her charge of the estate with the duty to invest and reinvest the assets. Neither would there have been any necessity for her continuing as executrix "during her natural life" and for his appointing Daniel Eisenhart as her successor thereafter. There is, of course, no legal objection to a person being constituted a trustee for one's self for life and also for the remaindermen: *Fox's Estate*, 264 Pa. 478, 479, 480, 107 A. 863, 864; *DuPuy's Estate*, 346 Pa. 143, 148, 29 A. 2d 689, 692. Unlike the mere life tenant of a legal estate, Clara V. Erdman was accountable in Northampton County for the proper performance of her duties and responsibilities as a *trustee* under her husband's will.[3]

To the surcharge of $6,401.09 should be added a debit item of $150 for dividends which came later into the hands of the accountant, and he should be allowed the credits claimed by him of $14.50 filing fee of the account and $100 counsel fees.

As thus modified the decree is affirmed. Costs to be paid out of the A. E. Erdman Estate.

---

[3] So also, where a life tenant fails or refuses to file a bond, and the assets are thereupon intrusted by the court, upon application of all parties in interest, to a trustee, the doctrine of a debtor-creditor relationship between the life tenant and the remaindermen is held to be inapplicable: *Loewer's Estate*, 263 Pa. 517, 106 A. 789.