Gordon Estate.

Argued September 30, 1948. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*P. J. McArdle,* for appellants at Nos. 84 and 85.

*Albert D. Brandon,* with him *A. M. Oliver,* for appellant at No. 89.

*J. Alfred Wilner,* with him *Arnold D. Wilner* and *George C. Mantzoros,* for appellants at Nos. 121 to 124, inclusive.

*J. Vincent Burke, Jr.,* and *J. Frank McKenna, Jr.,* with them *Howard Zacharias, A. M. Oliver, Albert D. Brandon, J. Alfred Wilner, Arnold D. Wilner, George C. Mantzoros, Strassburger & McKenna* and *Campbell, Houck & Thomas,* for appellee at Nos. 84 and 85.

*Howard Zacharias, J. Frank McKenna, Jr., Paul J. McArdle, J. Vincent Burke, Jr., J. Alfred Wilner, Arnold D. Wilner, George C. Mantzoros* and *Campbell, Houck & Thomas,* for appellee at No. 89.

*J. Frank McKenna, Jr., P. J. McArdle, A. M. Oliver, J. Vincent Burke, Jr.,* and *Campbell, Houck & Thomas,* for appellee at Nos. 121 to 124, inclusive.

OPINION BY MR. JUSTICE LINN, November 8, 1948:

These appeals require the construction of a will. It is said to have been prepared by a scrivener not learned in the law. It was executed February 24, 1934. The testatrix died March 3, 1934, unmarried and without issue. The sixth paragraph, which disposes of the residue, provides: "I direct that, if in the discretion of the executors, it be advisable to dispose of any of my real estate not heretofore bequeathed, together with any that may have reverted back to my estate, under the

foregoing terms of this instrument, they are hereby empowered to do so; the proceeds from any such sales to be placed in securities heretofore mentioned. I further direct my executors, that, between the years of 1945 and 1950, when they deem it advisable, to dispose of all the remaining real estate in their trust and to divide the proceeds obtained from such sales, and the sale of any security or securities owned by my estate, together with any cash remaining from the original fund,[1] equally among all of the surviving heirs hereinbefore mentioned, as relatives."

The questions are: (1) Did the direction to sell the residue and divide the proceeds "equally among all of the surviving heirs hereinbefore mentioned, as relatives" create vested or contingent interests? (2) Who are the "surviving heirs hereinbefore mentioned, as relatives"? (3) Is the appellant, Mae Hutzler, testatrix's brother's divorced wife, one of the "surviving heirs hereinbefore mentioned, as relatives"? (4) Under other paragraphs of the will, are the monthly payments directed to be made to a brother and sister "until the liquidation of the entire estate" payable to their estates after their respective deaths?

The auditing judge held the gifts contingent; that Mae Hutzler was not within the class "surviving heirs"; that the monthly payments to brother and sister until final liquidation ended with their respective deaths.

The court in banc (the auditing judge dissenting in some respects) disagreed with the auditing judge and held that "the surviving heirs hereinbefore mentioned, as relatives" took "a vested estate in the residue with

---

[1] "FOURTH. I direct that the cash remaining in banks, both checking and savings accounts, and Building and Loan Associations, after the distribution of all cash bequeaths [sic] have been made, be placed in a trust account such as United States Government bonds, also the income from rents and mortgages, after taxes, repairs and other incidentals have been paid under the supervision of the executors of my estate."

possession and enjoyment postponed to the time of final liquidation"; that the monthly payments to brother and sister were payable after their deaths and until final liquidation; all agreed that Mae Hutzler was not a surviving heir.

There are seven appeals: some complaining of one decision and some of another; Mae Hutzler complains that she was excluded from sharing under the sixth paragraph. Since the oral argument all interested parties have filed a stipulation agreeing that final liquidation has now taken place and stating the names of the parties who "for the purposes of this appeal" have "survived final liquidation of the estate."

1. On the main question whether the interests granted are vested or contingent, we have concluded that by the terms of the will the interests are contingent on survival at the time of final liquidation. The testatrix specified two periods of survivorship, a specification apparently required by the scheme or plan of the will. Her ideas of survivorship would have been incompletely expressed unless she defined the time at which, or the event by which, the consequences of survivorship, as she intended them, should be determined. We think the words of the will made this clear and that it will so appear on the examination of the whole will which the familiar rule [2] requires us to make, in order to ascertain her expressed intention.

When she made her will and at the time of her death, she had living a number of blood relatives: a brother, Harry, a sister, Mary, three nephews named Wharton, a niece and a nephew who were children of her brother Harry, and a nephew, son of her sister, Mary. She desired to make gifts to them for their immediate

---

[2] See *Brennan's Estate*, 324 Pa. 410, 413-14, 188 A. 160, 161 (1936); *Calder's Estate*, 343 Pa. 30, 34, 21 A. 2d 907, 910 (1941); *MacMackin Estate*, 356 Pa. 189, 193, 51 A. 2d 689, 691 (1947).

benefit and she began by directing the conveyance of a certain house to her sister Mary for life but provided that "in the event of her death prior to the liquidation of the entire estate, the property shall revert back to the estate . . ." She provided similar life interests in other houses for her brother Harry, and for her three Wharton nephews. After giving those life estates in real property, she disposed of personal property. For her sister and brother she provided in these words: "To my aforementioned sister Mary Johnston should she survive me . . ." In the case of the brother the words are, "should he survive me." In addition, she gave each fifty dollars a month "up to the time of the liquidation of the entire estate." In providing monthly payments for a niece and three nephews, she used the same phraseology, "if my niece . . . survives me," "if my nephew . . . survives me."

In the undated codicil, which she directed "to become part of my will and testament, and to be as effective as if it were written in the original items" she made a gift to A. W. Johnston, Stanley Wharton and an additional gift to her brother, in each case adding to the name of the legatee the words "if he survive me."

She gave a legacy to Mae Hutzler, one of the appellants, in the following words, "To my sister-in-law Mae Hutzler, should she survive me, I bequeath . . ." $500.

Testatrix contemplated two important periods, the time of her death and the time of "the liquidation of the entire estate," and disposed of property with respect to each of those periods, the residuary provision including property not disposed of before. In making the first group of provisions for her relatives and her sister-in-law, testatrix described the beneficiaries in words quoted above as persons surviving her. She intended that her real estate in which she had given only life estates, should not be sold until some time after her death and directed the executors to sell the property "between the

years of 1945 and 1950" and "to divide the proceeds" "equally among all of the surviving heirs hereinbefore mentioned, as relatives." The gift is only to be inferred from the direction to divide among the members of the class. She did not then add words specifying that by surviving heirs she meant those who had survived her at the time of her death as distinguished from those who should also be surviving at the time of final liquidation which would be the normal meaning of "surviving" in the context. The contrast between the eleven uses of the words "survives me" in the gifts to the first group of beneficiaries and the normal meaning of "surviving" in the sixth or residuary paragraph is of controlling significance and is convincing that she intended to establish two periods for the determination of survivorship; that by surviving heirs she meant heirs who were surviving at the time of final liquidation. In providing for her relatives in the earlier paragraphs of her will she specified that they must be alive to receive the gifts; she intended to benefit living relatives, whom she had known.

Having concluded from our examination of the language of the whole will that testatrix expressed her intention to be that those of her named relatives who survived at the final liquidation should take, it is unnecessary to search for testamentary intention by applying so-called rules of construction. It is true that in survivorship cases it is frequently necessary to resort to such rules to reach a construction favoring vesting as against contingency, but it is elementary that such rules are never applied to defeat the expressed intention of a testator.

Testatrix's sister and her brother, to whom she directed monthly payments to be made "up to the time of the liquidation of the entire estate," died in 1946. The court held that their personal representatives were entitled to receive these payments until the final liquida-

tion. None of the appellants appears to question this seriously and we agree with the conclusion: see *McGlinn's Estate*, 77 Pa. Superior Ct. 582 (1921).

All the members of the learned court below agreed that Mae Hutzler was not within the class "surviving heirs hereinbefore mentioned, as relatives." While it is not uncommon to find that testators not adequately advised refer to their legatees as their heirs, testatrix, in this case, referred to them as the heirs "mentioned as relatives." The word relatives may include relatives by marriage as well as relatives by blood. Mae Hutzler had been the wife of Harry Gordon, brother of testatrix, but some years before the will was made the parties were divorced, thus severing the relations based on the marriage. It appears also that thereafter Harry Gordon married a second time and that his wife received a gift under the name Bess Gordon. It may be noted that in the 4th Item of the 3rd paragraph of the will, testatrix directs a monthly payment to be made to Virginia Mae Gordon (daughter of Mae Hutzler) "provided that she make her home separate and apart from her mother. Should she at any time reside with her mother or if her mother reside with her, said allowance shall cease during such period." What testatrix meant is a question of the intention expressed; in the circumstances we are convinced that testatrix did not intend that Mae Hutzler should share as one of the "heirs hereinbefore mentioned, as relatives."

In No. 89, the appeal of Mae Hutzler, the order appealed from is affirmed; in the other appeals, the order is affirmed in part and reversed in part; the record is remitted for the entry of appropriate decrees consistent with this opinion; costs of all the appeals shall be paid out of the fund for distribution.