Lyman Estate.

Argued April 19, 1950; reargued October 2, 1950. Before DREW, C. J., STERN, STEARNE, JONES and CHIDSEY, JJ.

*W. Horace Hepburn, Jr.,* with him *Barry H. Hepburn,* for appellants.

*Wm. Barclay Lex,* with him *Alfred W. Putnam, Warren S. Spalding, Norris, Lex, Hart & Eldredge* and *Fell & Spalding,* for appellees.

OPINION BY MR. JUSTICE JONES, November 22, 1950:

William R. Lyman, a resident of Philadelphia, died testate on October 23, 1928, leaving to survive him his widow, Fannie C. Lyman, but no issue. By his will, dated June 15, 1926, he left certain pecuniary legacies to collateral relatives and a charity; made an outright devise and a bequest to his wife of certain real estate and personal property; and devised and bequeathed his residuary estate to his wife for life with power to consume. The remainder "left at the time of her decease," he bequeathed to seven named collaterals and a charity in equal shares. He appointed Mrs. Lyman executrix of his will which was duly probated.

The presently material portion of William R. Lyman's will is as follows:

"IX. All the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever situate at the time of my decease, I give, devise and bequeath unto my dear wife, FANNIE C. LYMAN, for and during the term of her natural life, with full power and authority to use so much of my residuary estate from time to time as may be necessary for her support

and maintenance, should the income therefrom prove insufficient; the true intent and meaning of this provision of my Will is not to give to my dear wife either a fee simple in the real estate of this my residuary estate, or an absolute estate in the personal property passing under this my residuary clause, and no such construction shall be placed thereon. That my true intent and meaning of this clause is to give to my wife a life estate only in this my residuary real and personal property, and also to enable her to use so much of the principal as may be necessary for her support, in the event that the income from my residuary estate proves insufficient to supply her wants, and in the determining of what are necessary wants she is to be the sole judge.

"And from and immediately after the decease of my dear wife, I give, devise and bequeath all the rest, residue and remainder of my said residuary estate, real, and personal, that may be left at the time of her decease unto [seven named collaterals and a charity], in equal shares or parts, that is to say: to be equally divided among the above named legatees share and share alike, absolutely and in fee simple."[1]

[1] The will made the following further provisions for the testaor's wife:

"II. I give, devise and bequeath unto my dear wife, FANNIE C. LYMAN my property No. 3932 Spruce Street, in the City of Philadelphia, State of Pennsylvania, absolutely and in fee simple.

"I also give, devise and bequeath unto my dear wife FANNIE C. LYMAN all that certain lot or piece of ground, with the buildings or camp thereon erected, known as 'Camp Red Wing', located on the West side of Lake Placid, Essex County, State of New York, absolutely and in fee simple.

"I also give, devise and bequeath unto my dear wife FANNIE C. LYMAN all that certain cemetery lot located in Westminister Cemetery, Montgomery County, Pennsylvania, absolutely.

"III. I give and bequeath unto my dear wife FANNIE C. LYMAN all of the household goods, plate silverware, furniture and

Upon the audit of the account of Fannie C. Lyman as executrix of her husband's will, the Orphans' Court of Philadelphia County entered a decree on *November 29, 1930,* awarding to her, as life tenant, the residuary estate of her deceased husband at an appraised valuation of $187,378.01 *as of that date.* Mrs. Lyman died testate on April 28, 1948, having consumed in her lifetime, as found by the learned court below, $22,824.53 in value of her husband's residuary estate. There was thus left of that estate, on the basis of the 1930 appraisal, property of the value of $164,553.48. However, the unconsumed property was actually worth only $104,118.47 *as of the date of the life tenant's death.* The indicated loss in value, to wit, $60,435.01, was due entirely to depreciation in market value. For the most part, the securities and cash, comprising the unconsumed property, continued to stand at the date of Mrs. Lyman's death in her name, as executrix, or in the name of her deceased husband, William R. Lyman.

The remaindermen, contending that the life tenant was indebted to them for the value of the unconsumed portion of the residuary estate at the appraised value thereof as of the date of the original distribution, made claim accordingly against Mrs. Lyman's estate at the audit of the account of her executors; and, the court below so decreed on the assigned authority of

equipments or furnishings of every description whatsoever, contained in premises No. 3932 Spruce Street, in the City of Philadelphia; also all the household goods, plate silverware, furniture and equipments or furnishings of every description whatsoever, contained in my property located at Lake Placid, known as 'Camp Red Wing', or that may be contained in either of said premises at the time of my decease; also all of my jewelry of every description, and my automobiles and equipment, absolutely.

"I also give and bequeath unto my dear wife, FANNIE C. LYMAN the sum of Five thousand Dollars ($5,000.) in cash, absolutely."

*Powell's Estate,* 340 Pa. 404, 17 A. 2d 391, and *Hays Estate,* 358 Pa. 38, 55 A. 2d 763, where it was held, under the wills respectively there construed, that a debtor and creditor relationship existed between the particular life tenants with power to consume and the remaindermen.

We think the conclusion thus reached by the learned court below runs directly counter to the plain intent of William R. Lyman's will which, in last analysis, is the gauge whereby the respective rights of the life tenant and remaindermen are to be measured. That the intention of a testator is the pole star in the construction of his will requires no citation of authority. As was said by Mr. Justice STEARNE for this court in *Nicholson Estate,* 355 Pa. 426, 429-430, 50 A. 2d 283,— "That the *words* of the present will are nearly similar to those employed in the cases cited is not absolutely controlling. Every will, in a sense, is unique. Precedents are of little value. The same words, or those nearly similar, used under different circumstances and contexts, may express different intentions [citing cases]."

The question for decision here is whether the testator's will expresses or implies an intention that his widow, as life tenant of his residuary estate with power to consume, should be an insurer to collateral remaindermen of its asset value as of the date of the distribution thereof to her. In the very nature of the testamentary problem, it cannot be said dogmatically that, in all instances, a bequest for life with power to consume automatically creates a debtor and creditor relation between a life tenant and the remaindermen. In *DuPuy's Estate,* 346 Pa. 143, 150, 29 A. 2d 689, where *Powell's Estate,* supra, was advanced in support of the remaindermen's contention that the consuming life tenant was chargeable with the depreciation in the value of the testator's property while it was in her hands, our late brother, Mr. Justice LINN,

pointedly declared for this court that, "A testator may give a legal life estate and provide that the debtor-creditor rule shall not be applied but that the remaindermen shall take the risk of depreciation in value." And, it was there further recognized that a testator may so provide by implication as well as by direct expression. It is true that in *DuPuy's Estate* the will there involved constituted the life tenant a trustee for the remaindermen while, here, the testator did not employ technical terms from which a trust could be inferred. But, that distinction does not make the cardinal rule of construction as to the conclusiveness of the testator's indicated intent any less applicable.

What, then, was William R. Lyman's testamentary intent? As the law stood in 1926 when he executed his will, a life tenant *with power to consume* had never been held to be a debtor of the remaindermen. Such a life tenant was then spoken of as a "quasi trustee" for herself and the remaindermen: *Watson's Estate,* 241 Pa. 271, 280, 88 A. 433; and, the remainderman was *not* a creditor of a life tenant having a right of consumption: see *Metz's Estate,* 323 Pa. 241, 242, 185 A. 740. The rule of debtor-creditor relationship, which has pertained to an ordinary life tenancy,[2] was not extended to a life tenancy *with power of consumption* until the decision in *Powell's Estate* in 1941. The testator cannot, therefore, be presumed to have intended to impose a legal liability upon his wife, as life tenant, which extant rules of construction did not then impose on the character of life estate which he bequeathed. In *Hood v. Pennsylvania Society to Protect Children from Cruelty,* 221 Pa. 474, 479-480, 70 A. 845, this court pertinently said,—"It is quite true . . . that

---

[2] See *Kirkpatrick's Estate,* 284 Pa. 583, 586, 131 A. 361; *Weir's Estate,* 251 Pa. 499, 503, 96 A. 1086; *Letterle's Estate,* 248 Pa. 95, 98, 93 A. 935; and *Reiff's Appeal,* 124 Pa. 145, 149, 16 A. 636.

when a judicial decision is rendered the law is not presumed to be changed by it, but to have been the same before as after, although previous decisions may have been to a different effect. This is the general rule, but it is not to be applied in all cases without discrimination. On the subject of interpretation of wills it meets the cardinal and controlling principle that the intention of the testator must prevail . . . In the present case, therefore, as in all others, the question is, what was the intention of the testator, and that is to be ascertained by what the testator understood to be the legal meaning of his language at the time he used it."

Fannie C. Lyman, to whom the testator repeatedly refers in his will as "my dear wife" (see paragraph IX, supra, and paragraphs II and III in footnote 1, ante), was clearly the primary object of his bounty as the learned auditing judge correctly found. The testator devised and bequeathed to his wife, absolutely and in fee simple, his residence property in Philadelphia; his recreation camp in the Adirondacks; all of the household goods, silverware and furnishings of every description contained in the two premises; and all of his jewelry, automobiles and equipment of every nature. He then gave his wife his residuary estate for life with power of consumption and constituted her the *sole* judge in determining what her necessary wants were. There is not the slightest indication in the will that the testator intended to make his widow a debtor of the remaindermen for the unconsumed residuary estate at its originally appraised valuation. In the light of the express terms of the will, the testator could not have thought that a debtor and creditor relationship between his wife and the remaindermen with respect to his residuary estate could arise during the lifetime of the widow. He deliberately postponed creation of the gift to the remaindermen until "from and immediately after the decease of my dear wife"; and what they

then took was an interest in what "may be left at the time of her decease." Throughout, the will breathes a paramount solicitude for the comfort and economic welfare of the testator's widow. If it be said that the same was true in *Powell's Estate* and *Hays Estate,* supra, the answer is evident. It is a far different thing to find, if the *intent of the testator* be given due and appropriate effect, that he intended the primary object of his bounty to have the capital gains on the corpus of a life estate, *which she has the power to consume,* than it is to conclude that he intended to impose upon such primary beneficiary liability for depreciation in the value of the corpus on the basis of a rule of construction that did not exist when he executed his will. The testamentary intent in the present instance is clear. The remaindermen were to take merely what was left of the testator's residuary estate, in the form and at the value, as it existed upon Mrs. Lyman's death. There is no occasion for resort to rules of construction. As was said by Mr. Justice LINN in *Gordon Estate,* 360 Pa. 325, 330, 61 A. 2d 849,—". . . it is elementary that such rules are never applied to defeat the expressed intention of a testator." Manifestly, such intention cannot justly be ascertained by an ex post facto rule of construction.

Decree reversed and record remanded with directions that a decree be entered in accordance with this opinion; costs to be borne by the estate.

---

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

The majority's extraordinary but logically untenable conclusion is that a life tenant is a *debtor* entitled to accretions where there are gains but is a *trustee* not liable for depreciations where there are losses. Such curious result is reached because of *supposed* testamentary intent. It is predicated chiefly

upon the testator's grant of the right of the life tenant to consume, coupled with his expressions of affection for his wife, the life tenant. Such considerations, however, are not based upon testator's *express* words, but upon what the majority *assume* he must have intended. It is a well established rule requiring no citation of authority that in the construction of a will it is not what testator may have meant but the meaning of the language used. The majority also state in the opinion: "As the law stood in 1926 when [testator] executed his will, a life tenant *with power to consume* had never been held to be a debtor of the remaindermen", wherefore testator's intention is to be determined as of the date of the execution of the will. But such doctrine cannot be applied in this case. This present will obviously is professionally drawn. It contains technical terms: "life estate", "fee simple", "residuary", "remainder" and the like. But as stated by Mr. Justice JONES in *Farmers Trust Company, Executor, v. Wilson et ux.,* 361 Pa. 43, 46, 63 A. 2d 14: "Both sides are agreed that the answer to the question for decision depends upon the testatrix's intent, as disclosed by her will, and that, as regards such intention, the will is to be construed as of the date of its execution: [citing cases]. Such matters as the testator's capacity, the legality of the execution of his dispositions, the nature and quantum of his estate, etc., are ordinarily 'referable to the time and [are] determinative according to the law as it exists at the execution of the instrument': Quin's Estate, 144 Pa. 444, 459-460, 22 A. 965. But, *even though testamentary intent is to be construed as of the date of execution of a will, if the words employed to express the intent have a legal or technical meaning, they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary."* (Italics supplied)

The adjudication of Judge HUNTER so completely refutes the contentions of appellants, adopted by the majority, that I cannot profitably add to what he has so ably and accurately stated: "It has been the law of Pennsylvania that where personal property is delivered into the possession of a life tenant, he is not a trustee for the remaindermen, but the relation is that of debtor and creditor. The assets become the individual property of the life tenant, and his debt to the remainderman is the value of the assets at the time distribution was first made to the life tenant. The decree of distribution fixes the rights of the parties. The life tenant is responsible for that value, and not for any increase in the value of the fund thereafter. Likewise, any depreciation is the life tenant's loss, and his estate at his death must respond to the full amount of the debt as originally fixed: Reiff's Ap., 124 Pa. 145; Letterle's Est., 248 Pa. 95; Weir's Est., 251 Pa. 499; Kirkpatrick Est., 284 Pa. 583.

"In Powell's Est., 340 Pa. 404, followed by Hays Est., 358 Pa. 38, this principle, was extended to life estates where there was a power to consume the corpus. In each of these cases there had been appreciation in the value of the property, which it was held belonged to the life tenant, and that she was debtor to the remainderman for no more that its original value. In the instant case there is a substantial loss, and the question is whether the same rule applies.

"Where the will appoints the life tenant trustee for himself and the remainderman, there is no debtor-creditor relationship, and the remainderman must take in kind: Du Puy Est., 346 Pa. 143; Erdman Est., 352 Pa. 158.

"The Estates Act of 1947, P. L. 100, §13, 20 P.S. 301, declares that in every instance the life tenant shall be deemed to be a trustee and not a debtor to the remainderman. The Act, however, does not apply

to the present will, which came into operation before the effective date of the Act.

"Prior to Powell's Estate, supra, it was assumed with little discussion that a life tenant was not debtor to the remainderman where there was a power to consume. The ownership of the property remained in the testator's estate, and the remainderman took in kind at the life tenant's death such property as remained unconsumed.

"A transfer to the life tenant's individual name was a violation of the power, and a re-delivery was ordered to the original testator's estate or to the remainderman: Trout v. Rominger, 198 Pa. 91; Tyson's Est., 191 Pa. 218; Dickinson's Est., 209 Pa. 59; Rumsey's Est., 287 Pa. 448.

"In Watson's Est., 241 Pa. 271 (280), the life tenant was called a 'quasi trustee'; and in Metz's Est., 323 Pa. 241, it was declared that the remainderman was not a 'creditor' of the life tenant.

"In Rumsey's Est., supra, the award to the remainderman included stock dividends; and in Nieman's Est., 229. Pa. 41, it was recited that there had been a large increase in the value of the estate which was awarded to the executor of the original testator.

"Powell's Est., supra, is a modification of these decisions, and is confirmed by Hays Est., supra.

"In Reiff's Ap., 124 Pa. 145 (149), quoted in Powell's Est., Judge HANNA said: 'The result was in effect to make the sum thus received by testatrix a part of her individual estate. It could be invested by her in the purchase of real estate, embarked in mercantile adventures or stock speculations, or expended in her living and family expenses as she deemed advisable. The money became essentially her own; and she was simply a debtor to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sure-

ties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of testatrix, and entitled to interest from the date of her death . . . . . It follows, therefore, that testatrix cannot be allowed compensation for the care of the so-called trust fund; nor can it be diminished by deducting any portion of the expenses of the settlement of the estate.'

"The rule establishing a debtor-creditor relationship removed estates from the safeguards of the law of trusts, and often brought harsh results to either life tenant or remainderman. No surety in his right mind would go on a life tenant's bond when a bond was required, and it was formerly the law that when the court appointed a trustee to take over the fund, the unfortunate trustee had the same obligation as the life tenant: Weir's Est., 251 Pa. 499.

"However, the rule existed long as a rule of property, and neither the Legislature, nor the Commissioners who drafted the Fiduciaries Act of 1917, saw fit to change it, and it was repeatedly applied down to its repeal by the Estates Act of 1947.

"It is particularly difficult to apply where there is a power to consume. When the property goes into the ownership and control of the life tenant, as outlined in Reiff's Ap., supra, and loses its identity among the other property of the life tenant, there can be no certainty as to which property was consumed. The burden of proof that any property remains unconsumed is upon the remainderman: Welsh's Est., 239 Pa. 616; Richey's Est., 251 Pa. 324.

"The executors and legatees of Fannie C. Lyman contend that she was a trustee of the residue of his estate and not a debtor to the remaindermen, which is to be determined from the intention of testator, gathered from the language of the will and the surrounding circumstances.

"There is no debtor-creditor relationship where the will appoints the life tenant trustee for himself and the remainderman. To create a trust, the trustee need not be so named; if the administrative duties of a trustee are conferred upon the life tenant, such as the duty to 'invest', he is a trustee: Du Puy Est., 346 Pa. 143; Erdman Est., 352 Pa. 158.

"There is no duty of investment mentioned in the Lyman will.

"The contention is that the intention to create a trust may be found in other provisions of the will.

"In item IX where the testator gives his wife a life estate with power to consume, he says: 'The true intent and meaning of this provision of my will is not to give to my dear wife either a fee simple in the real estate of this my residuary estate, or an absolute estate in the personal property, and no such construction shall be placed thereon. That my true intent and meaning of this clause is to give to my wife a life estate only in this my residuary real and personal property, and also to enable her to use so much of the principal as may be necessary for her support, in the event that the income from my residuary estate proves insufficient to supply her wants, and in the determining of what are necessary wants she is to be the sole judge.'

"There is no implication of a trust in these words. It is careful language emphasizing merely the intent to create a life estate, with power of consumption, and no larger estate. It denies a fee simple in the life tenant, but does not change the legal life estate previously given into an equitable life estate.

"In item XI the will provides: 'I hereby authorize and empower my Executrix hereinafter named with full power and authority at any time after my decease, at her discretion, to sell or dispose of the whole or any part of my residuary estate . . . the proceeds, however,

to be subject to all the conditions contained in Paragraph IX of this my Will.' This power of sale is addressed to the 'Executrix' and contains no indication of a trust. It is entirely in harmony with the legal life estate given by paragraph IX: See Rumsey's Est., 287 Pa. 448 (454).

"The best argument made by the executors and legatees of the life tenant rests upon the language of the will which describes that which is given to the remaindermen, namely, the estate 'that may be left at the time of her decease.' This could mean what was left, taking into consideration losses or depreciation, the widow's consumption etc. She was the primary object of his bounty, and the will shows careful and solicitous provisions for her welfare, which are inconsistent with the thought that she should guarantee the estate of the remaindermen, who are collateral relatives and a charity, already provided for by immediate pecuniary legacies in the will.

"These arguments, however, are a reopening of the controversies determined in Powell Estate and Hays Estate, supra. In the former the remaindermen were given the estate 'which may then remain', and in the latter 'so much thereof as may remain.' In both it was held that a debtor-creditor relationship existed.

"No distinction can be made because in Powell's Estate and Hays Estate the property appreciated in value whereas in the instant case there is a great loss. A life tenant cannot be declared a debtor where there are gains, and a trustee where there are losses. He who takes profits must also suffer losses."

The majority opinion is obviously based upon a supposed injustice to the widow. The contest, however, is between the beneficiaries under the husband's will and those under the widow's will. Where a rule of property becomes no longer desirable for any reason, the appropriate method of change is by legislation, or

178

in appropriate situations by the forthright overruling of decided cases. In no event should the result be obtained by the declaration of supposed testamentary intent. Were the present case *sui generis* no great harm would result from this decision. There are, however, many wills executed prior to the effective date of the Estate Act of 1947, supra, where property rights might be seriously jeopardized.

It is for these reasons I dissent. I would affirm the decree.