## Lawson Estate

*Boyd L. Spahr, Jr.*, and *H. Ober Hess*, for accountants.

*W. Howard Dilks, Jr.*, for claimant.

*Louis Marion*, for Commonwealth.

KLEIN, P. J., December 3, 1962.—Harry Lawson died on March 30, 1961, unmarried and without issue, leaving a will and codicil which were admitted to probate on April 4, 1961, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge. . . .

Testator in the second paragraph of the will made gifts of an oil portrait, a china corner cupboard, and a grandfather clock. In the next paragraph he provided:

"THIRD: I give all the rest of my tangible personal property, except cash, and any insurance thereon to my cousin, Randolf Lawson, but if he predeceases me, I give such property to his issue living at the time of my death in equal shares, per stirpes. Particular articles shall be allocated among them as they agree or, if they cannot agree, as my Executors decide."

According to the inventory filed by the executors, decedent's estate had a value of approximately $400,-000, of which $350,000 was in stocks and bonds and about $22,400 was on deposit with three banks. In addition, certain gold and silver coins were found loose in decedent's safe deposit box. These coins were appraised by Harold B. Roedel of Samuel T. Freeman and Com-

pany, a qualified appraiser. The face values of these coins and their appraised values are as follows:

U. S. Twenty Dollar Gold Piece
St. Gauden's Type, 1914 ................$ 40.00
U. S. Twenty Dollar Gold Piece
St. Gauden's Type, Arabic 1907 .......... 50.00
U. S. Twenty Dollar Gold Piece
St. Gaudens, 1911 ..................... 40.00
Six U. S. Ten Dollar Gold Pieces
Indian Head, 1909
Indian Head, 1908
Indian Head, 1907 (Regular)
Liberty Head, 1906
Liberty Head, 1885
Liberty Head, 1901 ..................... 120.00
Five U. S. Five Dollar Gold Pieces
Liberty Head, 1861 ..................... 15.00
Liberty Head, 1901 ..................... 10.00
Liberty Head, 1886 "S" ................ 12.00
Indian Head, 1882 .................... 10.00
Indian Head, 1911 ..................... 10.00
British Pound and Sovereign
Gold Coin, George V, 1913 .............. 8.50
Six U. S. Gold Three Dollar Pieces
1859 ................................. 60.00
1863 ................................. 65.00
1874 ................................. 60.00
1864 ................................. 65.00
1888 ................................. 65.00
1878 ................................. 60.00
2 U. S. Two and Half Dollar Gold
Piece, 1878—"S" ..................... 12.50
 1889—"S" ..................... 15.00
U. S. Silver Dollar
1921, Peace Type ..................... 2.50
U. S. Silver Dollar
1799 (Very Poor) ..................... 2.00

| | |
|---|---|
| U. S. Silver Half Dollar 1819 (Good) | 2.00 |
| U. S. Silver Half Dollar 1805 (Good) | 7.50 |
| U. S. Silver Half Dollar 1893, Columbian | .75 |
| U. S. Silver Quarter Dollar 1838 | 2.00 |
| U. S. Twenty Cent Piece 1875 | 4.50 |
| Six U. S. Nickels 1883 (Regular) | 3.00 |
| One U. S. Silver III Cent Piece 1852 | .50 |
| One U. S. Silver Ten Cent Piece 1829 | 1.00 |
| One British Silver Coin 1828 (10) | .25 |

The Court is asked to determine whether these coins are "cash" and therefore not included in the bequest to "Randolf" Lawson, under paragraph third, or constitute tangible personal property and pass to him.

Testator's intention must be gathered from a consideration of all the language contained in the four corners of his will, his scheme of distribution, and the facts and circumstances surrounding him at the time he made his will: Lewis Estate, 407 Pa. 518 (1962). Under different circumstances and in different context the word "cash" used by testator may express a completely different intention, hence precedents are of little value in construing the will before us. See Mulert Estate, 360 Pa. 356 (1948); Lymen Estate, 366 Pa. 164 (1950).

The total face value of the coins in question, exclusive of the two British coins, was $172.38. Their appraised value was $744, of which the gold coins are

valued at $718, or more than 95 percent of the total appraised value.

The Gold Reserve Act, passed by Congress in 1934 (48 Stat. 337, 31 U. S. C. §440 et seq.), prohibited any further coinage of gold and also directed that all gold coins be withdrawn from circulation. Section 54.20 of the regulations issued by the Secretary of the Treasury, pursuant to the authority granted in the act, draws a sharp distinction between gold coins made prior to April 5, 1933, and those made thereafter. The former are considered to be of recognized value to collectors of rare and unusual coins; the latter may be presumed not to be. The former are exempted from the restrictions imposed by the statute and "may be acquired, held, or transported within the United States without the necessity of holding a license therefor."

As all the coins found in testator's safe deposit box were minted before 1933, they could not legally be circulated as currency and must be "considered to be of recognized special value to collectors of rare and unusual coin." They were all appraised for an amount far in excess of their face value. Likewise, all of the silver coins found in the box were worth considerably more than their face value and must also be regarded as in the category of rare coins.

The word "cash" has many different meanings. In Hooper v. Flood, 54 Cal. 218 (1880), we find the statement that ". . . In modern times, there is no word in the English language so pregnant with meaning as the little word 'cash' . . ." The particular signification of the word may depend on the context or the circumstances of its use: 14 C. J. S. 15.

In Webster's Collegiate Dictionary (5th Ed.), "cash" is defined as "a. Money, esp. ready money. b. Money or its equivalent paid promptly after purchasing." It is in this sense that we think testator used the word. Certainly, testator knew that Congress had with-

drawn from circulation the gold coins, which constituted the major portion of the collection in question. He also must have known that all of the coins were worth a great deal more than their face value. It would be illogical to think that testator would regard as "cash" a $20 gold piece that had a value of $50 as a rare coin, or a silver half dollar that could be sold for $7.50, because, as cash, these coins would be worth only their face value.

The fact that $250 in ordinary currency, such as is used daily in the course of business, was found among decedent's effects is particularly significant. We are impelled to conclude that it was to this money that testator referred when he used the word "cash".

The auditing judge therefore rules that testator did not regard the coins in question as "cash" but intended to include them in his gift of "tangible personal property" to his cousin, Randolph Lawson.

The auditing judge is supported in this conclusion by a study of the will from its four corners. Testator's cousin, Randolph Lawson, and his issue were obviously the favored objects of his bounty. After disposing of his tangible personal property and making gifts of pecuniary legacies totaling $4,500, testator placed his entire estate in trust, giving the income on one-half to Randolph Lawson, for life, and the income on the other half to Charlotte S. Lawson, until her death or remarriage, with ultimate gifts in remainder of the entire trust to the issue of Randolph Lawson. Since testator gave substantially all of his items of tangible personal property to "Randolf", it is evident that he intended that his stocks, bonds, and money on deposit in banks, which had an aggregate value of almost $375,000, should constitute the corpus of the trust estate he created. The total value of the coin collection is so insignificant compared to the total value of the trust estate that it is reasonable to assume that testator intended

these coins to be distributed as "personal effects" rather than to be absorbed in the trust res. Accordingly, the "gold and other coins", as thus identified in the inventory and the account, which were found in decedent's safe deposit box, will be awarded to the said "Randolf" Lawson under the provisions of paragraph third of the will. . . .

And now, December 3, 1962, the account is confirmed nisi.