## Johnson Estate

*F. Kenneth Moore,* for accountant.

*Raymond M. Seidel* and *Andrew M. Knowlton,* for widow.

TAXIS, P. J., February 26, 1960.— . . . George R. Johnson died on June 26, 1958, and in the fourth paragraph of his last will and testament provided in part as follows:

"ITEM: As to the real estate I own, comprising a bungalow and lot, which has been my home for years, at 44 Grove Avenue, Flourtown, Springfield Township, Montgomery County, Pennsylvania, I give and devise the same to my wife, Mary Ethel Johnson, for and during the term of her natural life, and upon her death, I devise the said real estate to my son, Earle B. Johnson, absolutely, provided he is living and survives my widow; . . ."

Subsequent provisions relate only to other remainder interests which are not here pertinent inasmuch as Earl B. Johnson survived decedent.

The account reveals that principal charges in this estate exhausted the personal property with the result that on June 26, 1959, the executor, Earl B. Johnson, filed a petition with this court for leave to sell premises 44 Grove Avenue, Flourtown, to Mary Ethel Johnson, widow of decedent, for $12,000. A decree was accordingly entered and the balance for distribution in this estate is comprised of the balance of the sale price after payment of the remaining costs and expenses.

The fund necessary for the purchase of the real estate was supplied by a son of Mrs. Johnson who immediately subsequent to the settlement for the Grove Avenue property purchased the same from her subject to a mortgage, with the result that Mrs. Johnson occupies a room in the house which is now owned by her son and his family. The court recognizes that she is not a woman of substantial means.

The question requiring determination relates to the proper distribution of the remaining proceeds of the sale of this real estate as between the widow and the remainderman, Earl B. Johnson. Because of the possible effect of this decision upon the desirability of taking against the will, Mrs. Johnson has preserved her right to do so by a decree of this court dated June 29, 1959, granting her an extension of time in which to elect to take against the will until 60 days after final confirmation of this adjudication.

Counsel for Mrs. Johnson seek immediate outright distribution to her of the commuted value of her life estate and a distribution to Earl B. Johnson of the balance of the fund, which would of necessity represent his remainder interest. In so contending they rely mainly upon Foote's Estate, 24 Dist. R. 507. In that case the fund before the court consisted of the proceeds of the sale of real estate and the widow had elected to take against the will. This entitled her to a life interest in one-third of the proceeds, which amounted to

$281.67. After first holding that such a small sum ought not to be held in trust, the court awarded the actuarial value of the life estate or $184.50 to the widow, rejecting the common law rule that a life interest was equivalent to one-third of the whole interest.

In evaluating the applicability of Foote's Estate, supra, it is necessary to understand that, prior to the Estates Act of April 24, 1947, P. L. 100, where a life estate existed in personalty or in the proceeds of real estate a remainderman was relegated to the status of creditor of the estate of the life tenant to obtain the value of his remainder interest. In Reiff Appeal, 124 Pa. 145, the court, in discussing the rights of a remainderman in this situation said, at page 149: "The money became essentially her [life tenant's] own; and she was simply a debtor to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of testatrix, and entitled to interest from the date of her death." See also Letterle's Estate, 248 Pa. 95.

This law has been altered by section 13 of the Estates Act of 1947, 20 PS §301.13, which provides insofar as here pertinent:

"A person having a present interest in . . . the proceeds of the conversion of real estate, which is not in trust, and which is subject to a future interest, shall be deemed to be a trustee of such property, and not a debtor to the remainderman, with the ordinary powers and duties of a trustee, except that he shall not be required to change the form of the investment to an investment authorized for Pennsylvania fiduciaries, nor shall he be entitled to compensation as trustee . . ."

Additional provisions cover the entry of security by the trustee-life tenant.

The applicability of section 13 to this case is clear, especially since counsel for Mrs. Johnson concede this point. They contend, however, that this court has discretion in applying section 13, and cite Bregy, Intestate, Wills and Estates Acts of 1947. A reading of this text convinces me that no such conclusion is warranted. On page 5963, the following statement is made by Mr. Bregy, after an exhaustive discussion of the defects of the law as it existed prior to the Estates Act of 1947:

"It was therefore provided that all provisions of this sort in conveyances taking effect after January 1, 1948, shall be treated as creating trusts with the first taker as trustee for himself and the remainderman . . . Note that the new act goes far beyond providing a rule of construction. The law creates the trust regardless of the conveyor's intent, and future interests in personalty without a trust in instruments governed by the present act are legal impossibilities."

In addition, the comment of the Joint State Government Commission accompanying section 13 of the Estates Act, contains the following statement:

". . . 'and not a debtor to the remainderman' was added to emphasize the fact that the rule of law heretofore found in Fiduciaries Act [of June 7, 1917, P. L. 447], section 23, 20 PS §635, will no longer apply."

Mrs. Johnson argues in addition that this matter in substance is no different from one of termination of an existing trust under section 2 of the Estates Act of 1947, supra, inasmuch as the discretion to terminate would necessarily include the power not to establish a trust in the first place, if the equities of the situation required that result. The language of section 2, however, requires that the court find "that the original purpose of the conveyor cannot be carried out or is impractical of fulfillment and that the termination, partial termination, or allowance more nearly approxi-

409

mates the intention of the conveyor, . . .": 20 PS §301.2.

Even conceding the applicability of section 2, the present facts do not warrant the above finding. The purpose of testator was a limited one, that of providing a roof over his wife's head for the balance of her life. Precisely this he did not accomplish, but it is not possible to conclude from this record that the immediate payment of a lump sum of some five or six thousand dollars to Mrs. Johnson would come closer to fulfilling the purpose of her husband than would awarding her the income from this fund for her life. In fact, it seems to this court that the advantage of security and permanence lies with the latter plan. Reported cases relating to the discretionary termination of trusts (for example, Auchu's Estate, 38 D. & C. 33, Posey's Estate, 52 D. & C. 127; Exley Estate, 67 D. & C. 508) deal with much smaller sums intended for much broader purposes, and thus do not govern the present case. . . .

The balance for distribution after payment of the family exemption as above set forth is awarded to Mary Ethel Johnson, trustee under section 13 of the Estates Act of 1947, who is directed to enter security therefor in the amount received by her. . . .